**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **LARRY KLAYMAN**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 14-cv-00092 (RJL)** |
| | ) | |
| **BARACK OBAMA, President of the** | ) | |
| **United States**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 4

    I.  Plaintiffs fail to identify a definite and ascertainable class. .......................... 5

        A.  Plaintiffs plead multiple inconsistent class definitions. ...................... 7

        B.  The proposed class definitions are so vague that they are unworkable. ......... 10

        C.  The proposed class definitions require classified information to determine
            class membership. .......................................................................... 14

        D.  Four of the proposed definitions would create improper fail-safe classes...... 16

    II.  Plaintiffs cannot meet their burden under Rule 23(a). ................................. 19

        A.  The proposed classes are too broad to fulfill Rule 23(a)(2)'s
            commonality requirement. ............................................................... 19

        B.  Plaintiffs' claims and defenses are not "typical" of the putative
            classes as required by Rule 23(a)(3). ............................................... 23

        C.  Plaintiffs cannot adequately represent the proposed class as required by Rule
            23(a)(4). ........................................................................................ 25

            1.  Mr. Klayman's dual role as class representative and class counsel
               would consitute an insurmountable conflict of interest....................... 26

            2.  Counsel would not adequately represent the putative class................ 27

               a.  A body of case law documents Counsel's prior  litigation
                  misconduct.......................................................................... 29

               b.  Counsel's handling of this action confirms that Counsel
                  would not adequately represent the putative class. .................. 35

    III.  Plaintiffs cannot meet their burden under Rule 23(b)................................. 39

        A.  The overbreadth of the proposed classes and Plaintiffs' requests
            for money damages render certification under Rule 23(b)(2)
            inappropriate. ................................................................................ 40

        B.  Plaintiffs also cannot satisfy the predominance and superiority
            requirements of Rule 23(b)(3) ........................................................ 41

CONCLUSION..................................................................................................43

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Fed. Bureau of Investigation*,
  186 F.R.D. 144 (D.D.C. 1999) ........................................................................... 34

*Alexander v. Fed. Bureau of Investigation*,
  186 F.R.D. 180 (D.D.C. 1999) ........................................................................... 35

*Alexander v. Fed. Bureau of Investigation*,
  186 F.R.D. 197 (D.D.C. 1999) ........................................................................... 34

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 42

*Baldwin Hardware Corp. v. Franksu Enter. Corp.*,
  78 F.3d 550 (Fed. Cir. 1996) ............................................................................. 31

*Black v. Premier Co.*,
  2002 U.S. Dist. LEXIS 26461 (E.D. Pa. Aug. 13, 2002) .................................. 18

*Bynum v. Dist. of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003) ...................................................................... passim

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ...................................................................................... 4, 42

*Daskalea v. Washington Humane Soc'y*,
  275 F.R.D. 346 (D.D.C. 2011) .................................................................... 19, 24

*DL v. Dist. of Columbia*,
  2013 U.S. Dist. LEXIS 160018 (D.D.C. Nov. 8, 2013) ....................................... 5

*DL v. Dist. of Columbia*,
  713 F.3d 120 (D.C. Cir. 2013) .................................................................... passim

*Forras v. Rauf*,
  2012 WL 7986872 (N.Y. Sup. Ct. Sept. 26, 2012) ........................................... 34

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) .................................................................................... 19, 24

*Graybeal v. Am. Sav. & Loan Ass'n*,
  59 F.R.D. 7 (D.D.C. 1973) .......................................................................... 26, 28

*In re Copper Antitrust Litig.*,
  196 F.R.D. 348 (W.D. Wis. 2000) .......................................................................... passim

*In re Fannie Mae Secs. Litig.*,
  247 F.R.D. 32 (D.D.C. 2008) .................................................................................... 39, 42

*In re: Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ........................................................................................ 4

*In re Rodriguez*,
  695 F.3d 360 (5th Cir. 2012) ........................................................................................ 17

*Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*,
  159 F. Supp. 2d 763 (D.D.C. 2001) .............................................................................. 34

*Kamar v. Radio Shack Corp.*,
  2010 U.S. App. LEXIS 7664 (9th Cir. Apr. 14, 2010) .................................................. 17

*Kingsepp v. Wesleyan Univ.*,
  142 F.R.D. 597 (S.D.N.Y. 1992) ........................................................................... passim

*Klayman v. Barmak*,
  2009 WL 4722803 (D.D.C. Dec. 4, 2009) .................................................................... 34

*Klayman v. Freedom Watch, Inc.*,
  2009 WL 4782122 (S.D. Fla. Dec. 4, 2009) ................................................................ 34

*Klayman v. Judicial Watch, Inc.*,
  628 F. Supp. 2d 84 (D.D.C. 2009) .......................................................................... 34, 35

*Klayman v. Judicial Watch, Inc.*,
  802 F. Supp.2d 137 (D.D.C. 2011) ....................................................................... passim

*Klayman v. Obama*,
  957 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................... passim

*Lindsay v. Gov't Employees Ins. Co.*,
  251 F.R.D. 51 (D.D.C. 2008) ....................................................................................... 36

*Love v. Johanns*,
  439 F.3d 723 (D.C. Cir. 2006) ................................................................................. 20, 21

*Love v. Veneman*,
  224 F.R.D. 240 (D.D.C. 2004) ..................................................................................... 40

*MacDraw, Inc. v. CIT Grp. Equip. Fin. Inc.*,
  73 F.3d 1253 (2d Cir. 1996) ........................................................................................ 32

*MacDraw, Inc. v. CIT Grp. Equip. Fin. Inc.*,
  138 F.3d 33 (2d Cir. 1998)........................................................................ 32, 33

*MacDraw, Inc. v. CIT Grp. Equip. Fin. Inc.*,
  994 F. Supp. 447 (S.D.N.Y. 1997)................................................................. 33

*MacDraw, Inc. v. CIT Grp. Equip. Fin. Inc.*,
  1994 U.S. Dist. LEXIS 363 (S.D.N.Y. Jan. 18, 1994) .............................. 32, 36

*Mazzei v. Money Store*,
  288 F.R.D. 45 (S.D.N.Y. 2012) ................................................................. 16, 17

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ........................................................................ 17

*Palumbo v. Tele-Communications, Inc.*,
  157 F.R.D. 129 (D.D.C. 1994)................................................................. passim

*Pigford v. Glickman*,
  182 F.R.D. 341 (D.D.C. 1998)................................................................. 17, 18

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
  646 F.3d 347 (6th Cir. 2011) ........................................................................ 17

*Shields v. Wash. Bancorp.*,
  1991 U.S. Dist. LEXIS 14373 (D.D.C. Oct. 10, 1991).................................... 26

*Thorpe v. Dist. of Columbia*,
  2014 U.S. Dist. LEXIS 42605 (D.D.C. Mar. 29, 2014)........................... passim

*United States v. Mendoza*,
  464 U.S. 154 (1984)........................................................................................ 4

*Wagner v. Taylor*,
  836 F.2d 578 (D.C. Cir. 1987).................................................................. 26, 27

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)............................................................................ passim

*Walter v. Palisades Collection, LLC*,
  2010 U.S. Dist. LEXIS 7374 (E.D. Pa. Jan. 26, 2010) ........................... passim

*Wash. Legal Clinic for the Homeless v. Barry*,
  107 F.3d 32 (D.C. Cir. 1997)......................................................................... 40

*Wells v. Allstate Ins. Co.*,
  210 F.R.D. 1 (D.D.C. 2002)................................................................................ 28

*Wire Rope Importers' Ass'n v. U.S.*,
  1994 WL 235620 (Ct. Int'l Trade May 26, 1994)............................................. 33

## RULES AND REGULATIONS

Fed. R. Civ. P. 23................................................................................................ passim

## MISCELENOUS

William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions
  (5th ed. 2011)............................................................................................... passim

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **LARRY KLAYMAN,** *et al.,* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 14-cv-00092 (RJL)** |
| | ) |
| **BARACK OBAMA, President of the** | ) |
| **United States,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

The Government Defendants[1] respectfully submit this opposition to Plaintiffs' Motion for

Certification of Class and Memorandum in Support of Certification of Class, ECF No. 6, Mar.

25, 2014, ("Plaintiffs' Motion for Class Certification").  The case in which Plaintiffs now seek

class certification ("*Klayman III*") is Plaintiffs' third action related to alleged NSA intelligence-

gathering practices.  *See Klayman v. Obama*, 957 F. Supp. 2d 1, 7 (discussing No. 13-851

("*Klayman I*") and No. 13-881 ("*Klayman II*")).  While Plaintiffs had intended to bring both

prior suits as class actions, *see id.* at 7 n.3, they failed to comply with Local Civil Rule 23.1(b)'s

requirement that a motion for class certification be filed within ninety days of filing a putative

class complaint.  Apparently for that reason—none other can be discerned from the record—

Plaintiffs abandoned their class claims in both cases, *see* Plaintiffs' Praecipe Regarding Class

---

[1]  The "Government Defendants" are Barack Obama, President of the United States, Eric Holder, Attorney General of the United States, General Keith B. Alexander, Director of the National Security Agency (NSA), James Clapper, Director of National Intelligence (DNI), John O. Brennan, Director of the Central Intelligence Agency (CIA), and James Comey, Director of the Federal Bureau of Investigation (FBI), insofar as they are sued in their official capacities, together with defendants NSA, FBI, CIA and the United States Department of Justice.

Actions, Civ. No 13-851, ECF No. 71, Civ. No. 13-881, ECF No. 54, Jan. 15, 2014, and filed the *Klayman III* Complaint asserting claims nearly identical to those in *Klayman II*.[2]

The *Klayman III* Complaint proposes a class definition, *see Klayman III* Compl. ¶ 43; asserts that certification of that single class is appropriate under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), *id.* ¶¶ 50–51; and seeks, *inter alia*, compensatory, actual, and punitive damages in excess of twenty billion dollars, equitable relief, and attorneys' fees and costs, *id.* ¶¶ 57, 64, 72, 73. Plaintiffs' Motion for Class Certification proposes a single but *different* class definition in its introduction, *see* Plaintiffs' Motion for Class Certification at 1, and argues for certification of a single class under Rule 23(b)(2), until its last page where Plaintiffs offer, for the first time, four different definitions for multiple "proposed classes." *Id.* at 8. Plaintiffs' Motion for Class Certification makes no mention of Rule 23(b)(3).

Not one of the six class definitions that Plaintiffs propose passes muster under Rule 23. To begin with, for the reasons explained in Sections I.A–C below, all six fail to meet Rule 23's implicit requirements that a proposed class be definite and ascertainable. *See* Section I.A. The six separate definitions are not only inconsistent with each other but, even if viewed separately, depend on vague terminology and fail to communicate what individuals need to know to determine whether they are class members or not without additional information of a classified nature. *See* Sections I.B and I.C. Moreover, as discussed in Section I.D, four of these definitions impermissibly create "fail-safe" classes in which membership depends on whether an

---

[2] As explained in the Government Defendants' Motion to Stay Class Certification Proceedings Pending Resolution of the Government Defendants' Rule 12(b) Motion, ECF No. 9 (Apr. 10, 2014), the Government Defendants will be moving to dismiss the *Klayman III* Complaint on the grounds that, *inter alia*, the *Klayman III* Complaint constitutes impermissible claim-splitting to evade the application in *Klayman I* and *Klayman II* of the deadline for seeking class certification under Local Civil Rule 23.1(b).

individual's constitutional rights have been violated.  *See id.*  Such "fail-safe" definitions are both too narrow, since the putative classes have no members if the Court finds the alleged programs at issue are constitutional, and too broad, since the putative classes include anyone who claims *any* (not just those referenced in the *Klayman III* Complaint) of his or her constitutional rights have been violated in relation to broad categories of activities or information.  Also, all six proposed definitions are overbroad because none of them links class membership with whether an individual was subject to—or in any way affected by—any of the alleged programs that are the focus of the *Klayman III* Complaint.  As a result, each of the six putative classes includes countless numbers of people who would not be entitled to relief even if Plaintiffs prevailed on their own claims.  Section II.A below explains why such overbroad classes cannot satisfy Rule 23(a)(2)'s commonality requirement.

Sections II.B and II.C then explain why, even if class certification were otherwise warranted, Plaintiffs would not be appropriate class representatives.  To begin with, as discussed in Section II.B, Plaintiffs' claims are not typical as required by Rule 23(a)(3) because, as this Court has previously noted, they are not members of the putative class (or classes) they seek to represent.  *See Klayman*, 957 F. Supp. 2d at 8.  Furthermore, Plaintiffs' claims are subject to unique defenses (including claim-splitting) stemming from their handling of this litigation.  *See supra* note 2.  In fact, as explained in Section II.C, a body of case law spanning two decades and multiple jurisdictions forecloses a finding that Counsel for Plaintiffs could adequately represent the interests of the putative class members, and such representation is barred, in any event, by an insurmountable conflict of interest arising from Mr. Klayman's proposed dual role as counsel and class representative.

Because Plaintiffs fail to meet the prerequisites of Rule 23(a), the Court need not

consider whether they satisfy any of Rule 23(b)'s subsections.  However, if the Court reaches

that inquiry, the Court should find Plaintiffs have failed to meet their burden under Rule 23(b)(2)

or 23(b)(3) for the reasons explained in Sections III.A and III.B, respectively.

Ordinarily, a court should hesitate to certify a nationwide class action where, as here,

doing so would "improperly interfere with the litigation of similar issues in other judicial

districts."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).[3]  That is especially so in cases

against the Government involving legal issues of substantial public importance.  *See id.*; *United

States v. Mendoza*, 464 U.S. 154, 160 (1984).  As we discuss below, this case presents no

occasion for an exception to this guiding principle.

This Court should deny Plaintiffs' Motion for Class Certification.

## ARGUMENT

"The party requesting class certification under Rule 23 bears the burden of showing the

existence of a class, that all prerequisites of Rule 23(a) are satisfied, and the class falls within

one of the categories of Rule 23(b)."  *Thorpe v. Dist. of Columbia*, Civ. No. 10-2250, 2014 U.S.

Dist. LEXIS 42605, at *76 (D.D.C. Mar. 29, 2014) (quoting *Bynum v. Dist. of Columbia*, 214

F.R.D. 27, 30–31 (D.D.C. 2003)).  "Class certification is far from automatic."  *In re: Rail

Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013).  "Rule 23 does not

set forth a mere pleading standard.  A party seeking class certification must affirmatively

demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in

fact* sufficiently numerous parties, common questions of law or fact, etc."  *Id.* (quoting *Wal-Mart

---

[3] Multiple pending cases challenging the lawfulness of the telephony metadata program, and
other NSA intelligence-gathering activities, have been brought in other fora by individuals who
would be included in Plaintiffs' putative class (or classes).  *See, e.g., Klayman*, 957 F. Supp. 2d
at 7 (noting cases pending in New York, California, and Idaho).

*Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011)) (emphasis in original).  For all of the reasons

set forth below, Plaintiffs here cannot meet this burden.

## I.      Plaintiffs fail to identify a definite and ascertainable class.

"It is axiomatic that for a class action to be certified a 'class' must exist."  *Bynum*, 214

F.R.D. at 31 (quoting *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981)).  Thus, before proceeding

to the elements enumerated in Rule 23, courts generally test for the more fundamental "implicit

requirements" that a plaintiff plead a "definite" or "ascertainable" class.[4]  William B.

Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions §§ 3.1, 3.3 (5th ed.

2011).  "The level of precision required varies depending on the type of class sought to be

certified under Rule 23(b)."  *Thorpe*, 2014 U.S. Dist. LEXIS 42605, at *58 (internal quotation

omitted).  While Rule 23(b)(3) class actions require "a high level of precision," the test is less

stringent for Rule 23(b)(2) classes where only injunctive relief is sought.  *See id.* at **59–60.

"[I]n a (b)(2) injunctive class . . . actual membership need not . . . be precisely delimited because

such cases will not require individualized notice, opt-out rights, or individual damage

assessments."  *Id.* at 59.  But even in cases proceeding solely under Rule 23(b)(2), "a plaintiff

must establish the existence of a class and propose a class that accurately articulates the general

---

[4] While some cases in this Circuit have commented that the rationale underlying these "implicit requirements" does not apply to classes certified under Rule 23(b)(2), they have nonetheless gone on to assess the proposed class definitions for definiteness and ascertainability, albeit under less stringent standards than those applied to Rule 23(b)(3) classes.  *See, e.g., Thorpe*, 2014 U.S. Dist. LEXIS 42605, at *66–67 (noting that a stringent version of the test for definiteness which included "overbreadth" did not apply to Rule 23(b)(2) classes, but assessing "more importantly" that the proposed classes were not overbroad); *see also DL v. Dist. of Columbia*, No. 05-1437, 2013 U.S. Dist. 160018, at *39–44 (D.D.C. Nov. 8, 2013) (noting agreement with the First and Tenth Circuits, which do not require "precise ascertainability" because "the rationale for precise ascertainability is inapposite in the 23(b)(2) context"; but nonetheless assessing whether the proposed class definitions were "sufficiently objective for determination of whether a particular individual is a member of the class").

demarcations of the class of individuals who are being harmed by the alleged deficiencies." *Id.* at 59–60 (internal quotations omitted).

Because it is not clear whether Plaintiffs here are seeking to proceed under Rule 23(b)(2) or 23(b)(3),[5] the Court's analysis in *Bynum v. Dist. of Columbia*, where the plaintiffs sought certification under both 23(b)(2) and 23(b)(3), is instructive. *See* 214 F.R.D. at 31.  In *Bynum*, the Court noted that while the standard it applied was "not designed to be a particularly stringent test, . . . plaintiffs must at least be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation." *Id.* (quoting *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998)).  This preliminary inquiry examines whether "an individual would be able to determine, simply by reading the definition, whether he or she was a member of the proposed class." *Id.* at 32.

The Court found the proposed class definition in *Bynum* satisfied this test because "no terms in the definition . . . require[d] further clarification." *Id.*  The proposed definition there required only that an individual have been incarcerated in a District of Columbia Department of Corrections facility during a particular timeframe, and that that individual not have been released by midnight on the date on which he was entitled to release. *See id.*  In contrast, the Court highlighted the class definition rejected in *In re Copper Antitrust Litigation*, 196 F.R.D. 348 (W.D. Wis. 2000), which proposed a class of "all copper or metal dealers . . . that purchased physical copper" during a specified period "at prices expressly related to LME or Comex copper

---

[5] The *Klayman III* Complaint pleads both Rule 23(b)(2) and 23(b)(3), *see Klayman III* Compl. ¶¶ 50–51, and Plaintiffs' Motion for Class Certification indicates that the putative class will be pursuing compensatory and punitive damages. *See* Plaintiffs' Motion for Class Certification at 5.  But Plaintiffs' Motion for Class Certification mentions only Rule 23(b)(2), which would not permit certification for such monetary claims unless they were incidental to injunctive relief. *See id.* at 2; *see also* Sections III.A and III.B below (discussing, respectively, why the proposed class definitions do not satisfy Rule 23(b)(2)'s and Rule 23(b)(3)'s requirements).

future prices." *Id.* at 31–32 (quoting *In re Copper Antitrust Litig.*, 196 F.R.D. at 350).

"[B]ecause it failed to explain the meaning of the terms 'copper or metals dealers,' 'physical

copper,' and 'expressly related to,'" this latter definition "fell 'far short of communicating to

copper purchasers what they [would] need to know to decide whether they [were] in or outside

the proposed class." *Id.* at 31 (quoting *In re Copper Antitrust Litig.*, 196 F.R.D. at 358–60).

Here, for several reasons, the class is not ascertainable because an individual would not

"be able to determine, simply by reading the definition, whether he or she was a member of the

proposed class." *Id.* To begin with, an individual would have difficulty identifying the

definition that should guide his determination based on the six different class definitions

Plaintiffs propose in their Motion for Class Certification and the *Klayman III* Complaint.

*Compare* Plaintiffs' Motion for Class Certification at 1, 8, *with Klayman III* Compl. ¶¶ 43–44.

Any of these six definitions would require an individual to guess at the meaning of amorphous

language and the nature of the alleged classified activities at issue. Moreover, while the

definitions' reliance on vague terms renders the contours of the classes unknowable, those

aspects of the definitions that are clear fail to meet Rule 23's implicit "definiteness" requirement

because they are overbroad. Additionally, the last four impermissibly depend on ultimate

liability in this case. For all of these reasons, even before reaching the elements of Rule 23(a)

and (b), this Court should deny Plaintiffs' Motion for Class Certification.

**A. Plaintiffs plead multiple inconsistent class definitions.**

As a threshold matter, Plaintiffs in this case have failed to identify a class, much less a

"definite" or "ascertainable" one. Indeed, it is not clear whether Plaintiffs seek certification of

one class or multiple classes. The *Klayman III* Complaint pleads only a single nationwide class.

*See, e.g., Klayman III* Compl. at 3 ("Plaintiffs and members of the class pled below allege as

follows"); *id.* ¶¶ 43–44, 46, 48, 49–51.  Almost all of Plaintiffs' Motion for Class Certification

likewise refers to a single class.  *See*, *e.g.*, Plaintiffs' Motion for Class Certification at 1–2

(defining the "Nationwide Class"; arguing that "the proposed class" satisfies Rule 23(a)'s

numerosity requirement); *id.* at 5 (arguing common "questions of law and fact involved affecting

the members of the Class").  However, on the last page of the Plaintiffs' Motion for Class

Certification, for the first time, the Plaintiffs propose multiple classes.  Plaintiffs' Motion for

Class Certification at 8.  In a section entitled "Proposed Classes," Plaintiffs state that the

"proposed classes include" four different sets of people.  *Id.*  Given this discrepancy between the

*Klayman III* Complaint, the text of Plaintiffs' Motion for Class Certification, and the proposal

with which Plaintiffs conclude their motion, it is impossible to determine how many classes

Plaintiffs in this case are requesting.

      Nor are the contours of the proposed definitions clear.  In the *Klayman III* Complaint, the

Plaintiffs define the proposed class as:

> American citizens who are subscribers, users and/or consumers of Facebook,
> Google, Yahoo, YouTube, Skype, AOL, Sprint, AT&T, **Verizon**, Apple,
> Microsoft, PalTalk, and other certain telecommunications and internet firms and
> had their telephone calls, internet activities, and/or emails and/or any other
> communications made or received through said certain telecommunications and
> internet firms actually recorded and/or listened into by or on behalf of
> Defendants.

*Klayman III* Compl. ¶ 43 (emphasis added).  On the first page of Plaintiffs' Motion for Class

Certification, a similar, but somewhat altered, definition appears; here, Plaintiffs seek a class of

> American citizens who are **or have been** subscribers, users and/or consumers of
> Facebook, Google, Yahoo, YouTube, Skype, AOL, Sprint, AT&T, Apple,
> Microsoft, PalTalk, and other certain telecommunications and Internet **service
> providers** and **have** had their telephone calls, Internet activities, emails and/or
> any other communications made or received through said certain
> telecommunications and Internet **service providers, collected, recorded** and/or
> listened to by or on behalf of Defendants.

Plaintiffs' Motion for Class Certification at 1 (emphasis added).  This second definition excludes "Verizon," but otherwise casts a broader net than that of the Complaint, adding citizens who "have been subscribers, users and/or consumers," *id.*; removing the first definition's requirement that communications be "actually recorded and/or listened to," *Klayman III* Compl. ¶ 43; and bringing in persons whose communications were "collected" in addition to those whose communications were "recorded and/or listened to."  Plaintiffs' Motion for Class Certification at 1.  Both the Complaint and the Motion exclude from their definitions "officers, directors, and employees of Defendants, their legal representatives, heirs, successors, and assigns of Defendants, and all judges who may ever adjudicate this case."  *Klayman III* Compl. ¶ 44; Plaintiffs' Motion for Class Certification at 2.  By the end of Plaintiffs' Motion for Class Certification, however, Plaintiffs present an altogether different set of definitions, and this new set contains no such exclusion.  *See* Plaintiffs' Motion for Class Certification at 8.  Instead, the last page lists four previously-unmentioned groups as separate classes:

1. All persons whose constitutional rights have been violated by the Government Defendants with regard to telephonic metadata;
2. All persons whose constitutional rights have been violated by the Government Defendants with regard to Internet metadata;
3. All persons whose constitutional rights have been violated by the Government Defendants with regard to social media;
4. All persons whose constitutional rights have been violated by the Government Defendants with regard to overseas phone calls and foreign communications, known as PRISM or MUSCULAR.

*Id.*  In sum, if the Court were to adopt the Plaintiffs' class definitions, an individual examining whether she is a member of Plaintiffs' proposed class (or classes) would be left guessing as to which of these proposed definitions would control the determination.

While, as discussed below, much of the language used in these six definitions is so vague as to render the definitions amorphous in their entirety, even the easily understood terminology

offers little help in defining the class because the different definitions provide different guidance. For example, the first definition includes "Verizon," *see Klayman III* Complaint ¶ 43 (without specifying which Verizon companies), while the second does not, *see* Plaintiffs' Motion for Class Certification at 1.  Additionally, the first two definitions above require class members to have American citizenship, *see Klayman III* Compl. ¶ 43; Plaintiffs' Motion for Class Certification at 1, while the last four proposed classes are open to noncitizens.  *See* Plaintiffs' Motion for Class Certification at 8.  Similarly, the first two definitions require specific relationships with enumerated or "other certain" but unspecified companies, *see Klayman III* Compl. ¶ 43; Plaintiffs' Motion for Class Certification at 1, while the last four make no reference to either specific companies or the class members' relationships with them.  *See* Plaintiffs' Motion for Class Certification at 8.  And, while the first class definitions exclude specific persons, the final four proposed classes do not.  *Compare Klayman III* Compl. ¶ 44; *and* Plaintiffs' Motion for Class Certification at 2; *with id.* at 8.  For persons who are noncitizens, who have no relationship with the enumerated companies, or who are members of the groups excluded from Plaintiffs' first two definitions, there is no way to determine whether they are outside the proposed class or classes (as they would be under the first two definitions), or included in the class (as they would be under the last four).  Likewise, "Verizon" customers would not know whether they were included or excluded.  In short, if the Court were to adopt Plaintiffs' proposal, an individual would not "be able to determine, simply by reading the definition, whether he or she was a member of the proposed class," because, as a preliminary matter, the individual would not know which definition to apply.  *Bynum*, 214 F.R.D. at 32.

**B.  The proposed class definitions are so vague that they are unworkable.**

Setting aside the problem of inconsistent definitions, each of the six proposed classes is

unworkable on its own terms.  Each contains language that falls "far short of communicating to [potential class members] what they [would] need to know to decide whether they [were] in or outside the proposed class."  *Bynum*, 214 F.R.D. at 32 (quoting *In re Copper Antitrust Litig.*, 196 F.R.D. at 358–60).  In *In re Copper Antitrust Litigation*, 196 F.R.D. 348 (W.D. Wis. 2000), the court rejected a class definition that included the terms "copper or metals dealers," "physical copper," and "expressly related to" because the meaning of those terms was not sufficiently clear.  *See* 196 F.R.D. at 358–60.  The six definitions at issue here contain far murkier language.

The class definition proposed in the complaint depends on several confusing terms.  *See Klayman III* Compl. ¶ 43.  To begin with, while it should be relatively straightforward to determine whether an individual is a "subscriber" to a particular communications service, it is by no means clear what activity is intended to qualify one as a "user" or "consumer" under this definition.  The definition links "subscribers, users and/or consumers" to twelve specific companies.  *See id.*  But while one can determine what it means be a "subscriber of AOL," it is less clear what type or amount of activity would render one a "user of Google," or what it would mean to be a "consumer of Microsoft," especially as Plaintiffs have enumerated eleven companies, rather than products or services that individuals "consume" or "use."  Furthermore, this definition refers to "certain telecommunications and internet firms," without naming those additional firms, and then hinges membership in the class on communications having been "made or received through said certain telecommunications and internet firms."  *Id.*  Because this definition does not identify those "certain" firms, it is impossible to determine whether subscription to, or use or consumption of (assuming *arguendo* that those terms had clear meanings in this context) a particular unnamed company's goods or services would render an individual eligible for membership in this class.

The second iteration of this definition, *see* Plaintiffs' Motion for Class Certification at 1, incorporates much of this language, with its attendant problems, but adds changes that only compound the confusion.  First, this second definition includes persons who "*have been* subscribers, users, and/or consumers." *Id.* (emphasis added).  This addition brings into sharper resolve the problems in the prior language—there is no way to know what amount of prior use or consumption would bring an individual into the class.  For example, would a person who had viewed a single YouTube video during 2012 qualify for membership?  What if that viewing occurred on a friend's computer?  What about borrowing a friend's AT&T phone to make a call in 2003?[6]  Countless similar questions would exist, and this class definition provides no answers.  This second definition also changes the first definition's references to "other certain telecommunications and internet *firms*," *Klayman III* Compl. ¶ 43 (emphasis added), into "other certain telecommunications and Internet *service providers*." Plaintiffs' Motion for Class Certification at 1 (emphasis added).  The change from "firms" to "service providers" presumably signifies a change in the class definition, including or excluding some group of companies; however, because neither "firms" nor "service providers" is a defined term, and these "certain other" entities remain unnamed, *see id.*, it is impossible to know who gains or loses class membership as a result of this new language.  Finally, like the previous definition, this new class definition includes persons whose communications were "recorded and/or listened to by or on behalf of Defendants," *id.*, but this new definition excludes the previous definition's requirement that those communications were "*actually* recorded and/or listened into." *Klayman III* Compl. ¶ 43 (emphasis added).  Again, it is impossible to know what communications this change adds to

---

[6] The inclusion of AT&T and YouTube in these illustrative examples is based solely on their inclusion in the putative class definitions, and is not meant to confirm or deny the involvement of these companies in the alleged programs at issue.

the proposed definition.

The four definitions Plaintiffs list as "Proposed Classes" are murkier still.  Plaintiffs' Motion for Class Certification at 8.  Each of them hinges class membership on the ultimate issue in this case—whether the putative class members' "constitutional rights have been violated."  *Id.* Section I.D.2 below addresses the flaws with this approach, as well as why such a definition would not allow a potential class member to "be able to determine, simply by reading the definition, whether he or she was a member of the proposed class."  *Bynum*, 214 F.R.D. at 32.

Additionally, multiple terms in these four definitions are undefined, including "constitutional rights," "social media," and "foreign communications," and thus leave open precisely what conduct or alleged violations are at issue.  *See* Plaintiffs' Motion for Class Certification at 8.  Notably, in particular, with respect to "foreign communications," the last of these four proposed class definitions further muddies the waters, referring to "overseas phone calls and foreign communications, known as PRISM and MUSCULAR."  *Id.*  The *Klayman III* Complaint alleges that "PRISM" and "MUSCULAR" are Government programs, *see Klayman III* Compl. ¶¶ 2, 8; it is not clear what role these words serve in the proposed class definition, and how they can modify "overseas phone calls and foreign communications."

Further adding to the confusion, these four definitions all depend on the amorphous phrase "with regard to."  *See* Plaintiffs' Motion for Class Certification at 8.  All four refer to "All persons whose constitutional rights have been violated by the Government Defendants with regard to" a broad category.  "With regard to" in this context is even less definite than the phrase "expressly related to," rejected as impermissibly vague in *In re Copper Antitrust Litig.*, since the word "expressly" provided some guidance as to the latter phrase's meaning.  *See* 196 F.R.D. at 358–60.  Here, "with regard to" gives no hint as to what relationships between the alleged

violations and the stated categories would suffice under these definitions, and what relationships would fall outside these classes.  Because this and so many other terms in the proposed definitions "require further clarification," *Bynum*, 214 F.R.D. at 32, the Court should reject these proposed class definitions.

C.      **Class membership cannot be ascertained on the face of any of the proposed class definitions.**

Although none of the proposed class definitions expressly includes such a limit, the gravamen of Plaintiffs' claims is their allegation that the Government Defendants have "violat[ed] Plaintiffs' constitutional rights as a result of [the activities pled in Plaintiffs' complaint]." [7] *Klayman III* Compl. at 3 (asserting Plaintiffs' rights were violated "as a result of the below pled illegal and criminal acts").  The activities pled in the *Klayman III* Complaint, in turn, include the "the Government's expansive acquisition of Plaintiffs' telephone and internet records under Section 215 of the Patriot Act," *id.* ¶ 1; "[t]he NSA's classified surveillance program, referred to as 'PRISM,' . . . authorized by Section 702 of the Foreign Intelligence Surveillance Act," *id.* ¶ 2; and "a Government program entitled 'MUSCULAR,'" *id.* ¶ 8.  Plaintiffs' claims are, essentially, that "Plaintiffs and the members of the class" are subject to these "collections and surveillance tactics," *id.* ¶ 9, in violation of their constitutional rights under the First, Fourth, and Fifth Amendments, *see id.* ¶¶ 52–72.  Thus, although the class definitions fail to say so, an individual must have been subject to "collection" or "surveillance" under the programs discussed in the *Klayman III* Complaint to be a member of the class.

Membership in such a class cannot be ascertained on the face of the proposed definition

---

[7] This failure to link the proposed class definitions with the relief sought in the Complaint creates insurmountable problems under Rule 23(a)(2) and Rule 23(b)(2).  *See* Sections II.A and III.A below (discussing Rule 23(a)(2) and Rule 23(b)(2), respectively).

given the nature of the allegations made in the Complaint, which put at issue the operational

details of alleged intelligence-collection activities.  In particular, to determine whether or not an

individual is a class member would require classified national security information from which it

could be ascertained whether that individual is or has been subject to the alleged intelligence-

gathering activities at issue.

For example, with respect to NSA's alleged "PRISM" collection of communications

under Section 702, the Government has acknowledged that, for foreign intelligence purposes, the

NSA targets non-U.S. persons, located outside the United States, by acquiring communications

directly from certain U.S.-based electronic communications service providers.  This collection is

conducted pursuant to authority conferred by and (approval obtained from) the Foreign

Intelligence Surveillance Court ("FISC") under Section 702.  *See* Opposition to Preliminary

Injunction Motions at 13–15 (detailing information about this program that has been officially

acknowledged).  However, whether the communications of any particular individual (or of any

non-U.S. persons with whom they communicate) have been targeted for foreign intelligence

purposes under Section 702, so as to make them members of the class, is a classified fact subject

to protection under the law for national security information.

Regarding the bulk collection of telephony metadata under Section 215, while the

Government has acknowledged that the telephony metadata program remains ongoing, and that

multiple telecommunications service providers have been participants in the program since 2006,

*see* Gov't Defs.' Opp'n to Pls.' Mots. for Prelim. Injs., No. 13-881, ECF No. 21, at 9, 11–12

(Nov. 12, 2013) ("Opposition to Preliminary Injunction Motions") (detailing information about

this program that has been officially acknowledged), the Government has not disclosed the

identities of the providers from which bulk telephony metadata are collected,[8] much less the

identity of any particular person whose telephony metadata are included in such collection.

In sum,  determining whether an individual falls within any of the proposed  class

definitions would require classified information showing  whether he or she was subject to any

of the intelligence-gathering activities, alleged in the Complaint, on which proper class

membership would depend.  For this reason too, the proposed classes fail the simple test

articulated in *Bynum*; an individual would not "be able to determine, simply by reading the

definition, whether he or she was a member of the proposed class."  *Bynum*, 214 F.R.D. at 32.

**D.      Four of the proposed definitions would create improper fail-safe classes.**

The putative classes of "[a]ll persons whose constitutional rights have been violated with

regard to" broad categories of information or activities, *see* Plaintiffs' Motion for Class

Certification at 8, also fail to meet Rule 23's implicit requirements because they each require a

determination of the ultimate issue in this case to ascertain whether an individual is a member of

the proposed class.

Definitions dependent on the merits are especially problematic, not only because "the

general outlines of the membership of the class" are not "determinable at the outset of the

litigation," *Bynum*, 214 F.R.D. at 31 (quoting *Pigford*, 182 F.R.D. at 346), but also because they

lead to one-sided results.  "Either the class members win or, by virtue of losing, they are not in

the class, and therefore not bound by the judgment."  *Mazzei v. Money Store*, 288 F.R.D. 45, 55

(S.D.N.Y. 2012) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir.

---

[8] The sole exception is that the Government has acknowledged the authenticity of an unlawfully disclosed (and now expired) Secondary Order of the Foreign Intelligence Security Court ("FISC") dated April 25, 2013, which listed Verizon Business Network Services ("VBNS") as a recipient of that order.  Except for that single order, the Government has not declassified any further information regarding the identities of any carriers participating at any time in this program.

2011)).  Such classes are termed "fail-safe" because their definitions "shield[] the putative class members from receiving an adverse judgment."  *Id.*  While some courts have refused to impose a categorical rule against fail-safe classes, *see, e.g, In re Rodriguez, Inc.*, 695 F.3d 360, 369–70 (5th Cir. 2012), others have indicated that a fail-safe definition "is an independent ground for denying class certification."[9] *Randleman*, 646 F.3d at 352; *see also, e.g., Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (explaining that fail safe definitions are "improper"); *Mazzei*, 288 F.R.D. at 55 (observing that a fail-safe class "is unmanageable because the members of the class could only be known after a determination of liability"); *see also Kamar v. Radio Shack Corp.*, No. 09-55674, 2010 U.S. App. LEXIS 7664, at *2–3 (9th Cir. Apr. 14, 2010) (same).

Here, the proposed classes of "[a]ll persons whose constitutional rights have been violated with regard to" broad categories of information or activities, *see* Plaintiffs' Motion for Class Certification at 8, create the very problems discussed above.  If the Court found the intelligence-gathering activities at issue in the *Klayman III* Complaint to be constitutionally sound, then the proposed classes would have no members, and the Court's judgment would not be binding on anyone.

While, in some cases, a court can modify a class definition that improperly depends on a determination of liability, *see, e.g., Pigford*, 182 F.R.D. at 347, no such modification could create a viable class definition in this case.  In *Pigford*, the Court adjusted the definition of a subclass that referred to a determination from the United States Department of Agriculture ("USDA") that was "not in accordance with the law."  *Id.*  The Court reframed the definition to include those "who maintain that the written determination from [USDA] was not reached in accordance with

---

[9] The Government Defendants were not able to locate a case in which a federal court in this Circuit discussed the treatment of "fail-safe" classes.

law." *Id.* (internal quotation marks omitted).  With the Court's modification, that subclass included those African-American farmers who had a file with the USDA, had lodged a discrimination complaint with the agency, and had received a response to that complaint that they maintained was not in accordance with the law.  *Id.*  Here, an analogous modification— redefining these classes to include "all persons who maintain their constitutional rights have been violated with regard to" broad categories of information or activities —would not make Plaintiffs' amorphous class definitions any more definite, or bring them within the remaining requirements of Rule 23, because it would still lack the objective criteria—such as the filing of an administrative complaint and an allegedly unlawful response thereto—that rendered the modified class in *Pigford* sufficiently ascertainable.  *See, e.g., Black v. Premier Co.*, No. 01-4317, 2002 U.S. Dist. LEXIS 26461, at *18 n.8 (E.D. Pa. Aug. 13, 2002) ("this court will not attempt to remedy the faulty class definition because . . . plaintiffs have failed to meet the requirements of . . . commonality and typicality").

*******

For all of the reasons set forth above, Plaintiffs have failed to meet Rule 23's implicit requirements that they identify a definite and ascertainable class.  The Government Defendants respectfully submit that class certification should be denied on that basis alone, and that the Court need not consider whether Plaintiffs satisfy Rule 23's explicit requirements.

## II.     Plaintiffs cannot meet their burden under Rule 23(a).

Rule 23(a) provides that Plaintiffs must prove:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "Certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Wal-mart Stores Inc.*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (alterations omitted)); *see also id.* ("actual, not presumed conformance with Rule 23(a) remains . . . indispensable").  "A failure to adequately demonstrate any of these four requirements is 'fatal to class certification.'"  *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 372 (D.D.C. 2011) (quoting *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006)).  Here, because Plaintiffs cannot meet the requirements of Rule 23(a)(2), Rule 23(a)(3), or Rule 23(a)(4), the Court should deny the Plaintiffs' Motion for Class Certification.

### A.  The proposed classes are too broad to fulfill Rule 23(a)(2)'s commonality requirement.

Under Rule 23(a)(2), the Plaintiffs' "'claims must depend upon a common contention' that is 'of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *DL*, 713 F.3d at 125 (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. 2551).  "Rule 23(a)(2) does not require that all questions be common to the class."  *Id.* at 128 (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. 2556).  Indeed, "even a single common question' will do."  *Id.* (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. 2556).

Importantly, however, "[i]t is not every common question that will suffice to show commonality." *Love v. Johanns,* 439 F.3d 723, 729 (D.C. Cir. 2006) (quotation and alterations omitted). "The Supreme Court has emphasized that it would not be sufficient to allege "merely that [class members] have all suffered a violation of the same provision of law." *DL*, 713 F.3d at 125 (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551). Illustrating this limitation on the "common questions" that can satisfy Rule 23(a)(2), the Court of Appeals in *Love v. Johanns* highlighted a case in which the Sixth Circuit reversed the certification of a class, finding a lack of commonality. *See Love*, 439 F.3d at 729–30 (discussing *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006)). In *Reeb*, the district court had found that Rule 23(a) was satisfied "because the issue of whether the Defendant violated Title VII [would] be common to the class." *Id.* at 729 (alterations omitted) (quoting *Reeb*, 435 F.3d at 644). Reversing, the Sixth Circuit observed "if this were the test, every plaintiff seeking to certify a class in a Title VII action would be entitled to that certification." *Id.* Indeed, "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Id.* at 729–30 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). In sum, "[w]hat matters to class certification . . . is not the raising of common 'questions,' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *DL*, 713 F.3d at 125 (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551) (emphasis in original).

Here, Plaintiffs submit four "common legal and factual questions" that they contend fulfill Rule 23(a)(2):

(a) Whether Defendants' surveillance and gathering of American citizens' telephonic and Internet metadata violated Plaintiffs' and Class Members' constitutional rights, as guaranteed under the First, Fourth, and Fifth Amendments;

(b) Whether Plaintiffs and Class members are entitled to recover compensatory, statutory and punitive damages, whether as a result of Defendants' illegal conduct, and/or otherwise;

(c) Whether Plaintiffs and Class members are entitled to declaratory, injunctive and equitable relief; and

(d) Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

Plaintiffs' Motion for Class Certification at 5.  For several reasons, not one of these questions is sufficient to demonstrate the commonality required to warrant class certification.  To begin with, questions (b), (c), and (d) incorporate no legal or factual issues specific to this case, and ask generically what relief should be awarded.  Indeed, under (b), Plaintiffs specifically untether the question from the allegations in the Complaint, asking whether they are entitled to damages "as a result of Defendants' illegal conduct, *and/or otherwise*." *Id.* (emphasis added).  Asking whether the class is entitled to relief for *any reason at all* cannot satisfy Rule 23(a)(2); if it did, every action would possess the requisite "commonality."

Question (a) also does not pass muster.  This question does little more than allege "merely that [class members] have all suffered a violation of the same provision of law," *DL*, 713 F.3d at 125 (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551), an allegation that the Supreme Court and the Court of Appeals have specifically noted would not establish "commonality."  In fact, it is strikingly similar to the question found lacking in *Reeb*—"whether the Defendant violated Title VII."  *See Love*, 439 F.3d at 729–30 (quoting *Reeb*, 435 F.3d at 644).  Here, Plaintiffs propose that this Court accept "Whether Defendants' surveillance and gathering of American citizens' telephonic and Internet metadata violated Plaintiffs' and Class Members' constitutional rights, as guaranteed under the First, Fourth, and Fifth Amendments" as a "common question."  Plaintiffs' Motion for Class Certification at 5.  But this question,

referring broadly to "surveillance and gathering of American citizens' telephonic and Internet metadata" does not specify any program, policy, or activity that might be measured against the First, Fourth and Fifth Amendments' requirements.  At this level of generality, this question cannot satisfy the "one stroke" test articulated in *Wal-Mart*; that is, it cannot "generate common answers apt to drive the resolution of the litigation."  *DL*, 713 F.3d at 125 (emphasis omitted) (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551).  Indeed, at this level of generality, this question is too vague to generate an answer at all.

Setting aside the "common questions" argued by Plaintiffs, the six proposed class definitions are also overbroad relative to the allegations of the *Klayman III* Complaint, and for this reason, there is no "'common contention' that is 'of such a nature that it is capable of classwide resolution."  *Id.*  With respect to the first two class definitions proposed by Plaintiffs, both include individuals whose "telephone calls, internet activities, emails and/or any other communications made or received through said certain [telecommunications and internet service providers/firms]" were "actually recorded and/or listened into" or "collected, recorded and/or listened to" by Defendants.  *See Klayman III* Compl. ¶ 43 *and* Plaintiffs' Motion for Class Certification at 1.  While it is difficult to know the contours of these classes, *see* Section I above, at a minimum, they include any individuals who were involved in federal law enforcement proceedings and had information about their communications collected, recorded, or listened to pursuant to a warrant or subpoena.  Indeed, even individuals that consented to provide electronic information—and who would thus have no grievance related to the Government's collection of that data—would be part of these putative classes.  Because any "common questions" that might arise from the *Klayman III* Complaint would not reach large groups of people in these overbroad classes, the first two definitions that Plaintiffs propose cannot satisfy 23(a)(2).

The four definitions proposed at the end of Plaintiffs' Motion for Class Certification are broader still.  These putative classes would consist of "[a]ll persons whose constitutional rights have been violated by the Government Defendants with regard to" 1) telephonic metadata; 2) internet metadata; 3) social media; and 4) "overseas phone calls and foreign communications, known as PRISM and MUSCULAR."  Plaintiffs' Motion for Class Certification at 8.  With no limitation as to which constitutional rights are at issue, which government activity is challenged, or what "with regard to" means in this context, there is almost no limit to who might be included in these four classes.  The director of a religious school unable to obtain federal funding for charitable projects in developing countries might claim a violation of her First Amendment "with regard to" the foreign communications she had undertaken in furtherance of those projects. rights.  Individuals incarcerated for distribution of child pornography through social media sites might claim that their sentences violated the Eighth Amendment.  The inclusion of countless individuals who might claim violations of constitutional rights in some way related to electronic communication, having nothing to do with the intelligence-gathering activities alleges in the Complaint renders these four classes fatally overbroad.

Because each of the six proposed classes includes broad groups of people who, by definition, suffered no injury related to the conduct alleged in the *Klayman III* Complaint, none of these classes satisfies Rule 23(a)(2)'s commonality requirement.

### B.   Plaintiffs' claims and defenses are not "typical" of the putative classes as required by Rule 23(a)(3).

"While commonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct."  *Bynum*, 214 F.R.D. at 34 (emphasis in original).  In other words, Rule 23(a)(3)'s "typicality" requirement

"ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2550.

Under Rule 23(a)(3), Plaintiffs must establish that their claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). At a minimum, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (internal quotation omitted). Additionally, a representative who is subject to unique defenses cannot satisfy Rule 23(b)(3)'s typicality requirement. *See Daskalea*, 275 F.R.D. at 377 (recommending a finding that plaintiff "has not satisfied the Rule 23 typicality requirement since [plaintiff's] legal defenses differ from the defenses of the class"); *see also* Rubenstein, Conte & Newberg, *supra*, § 3.45 ("Courts generally find typicality lacking if the proposed class representative's claims are subject to a procedural bar such as res judicata"). Here, because Plaintiffs cannot show that they are members of the proposed classes, and because they are subject to unique defenses, Plaintiffs cannot meet their burden under Rule 23(a)(3).

Even if Plaintiffs could establish membership in the putative classes,[10] they would not be

---

[10] Insofar as the proposed class definitions are meant to encompass persons subject to the alleged intelligence-gathering activities discussed in the *Klayman III* Complaint, the Government Defendants continue to contest whether the Plaintiffs can establish that they are part of the proposed classes they seek to represent, including as to their challenge the collection of telephony metadata under Section 215. We also note that, while the Court found standing based on the Plaintiffs' allegations that they are Verizon Wireless Customers, *Klayman*, 957 F. Supp. 2d at 26, the Plaintiffs' second proposed class definition excludes Verizon. *See* Plaintiffs' Motion for Class Certification at 1. With respect to the targeted collection of the content of communications under Section 702 of the FISA, the Court has already found that Plaintiffs "have not alleged sufficient facts to show that the NSA targeted any of their communications." 957 F. Supp. 2d at 8. Additionally, although two proposed class definitions include "subscribers, users, and/or consumers of" "PalTalk," *Klayman III* Compl. ¶ 43 *and* Plaintiffs' Motion for Class Certification at 1, none of the putative class representative asserts that he or she subscribes to, uses, or consumes products of "PalTalk" in the *Klayman III* Complaint. *See Klayman III* Compl. ¶¶ 10–13.

"typical representatives" because they are subject to unique defenses that would not apply to the absent class members whom they seek to represent.  Specifically, as discussed in Section II.C.2 below, Counsel's handling of this litigation has left Plaintiffs' claims vulnerable to a motion to dismiss because the *Klayman III* Complaint constitutes impermissible claim-splitting undertaken for the apparent purpose of side-stepping the deadlines under the Local Civil Rules for seeking class certification in *Klayman I* and *II*.  *See also* Motion to Stay Class Certification Proceedings Pending Resolution of the Government Defendants' Rule 12(b) Motion, ECF No. 9 (Apr. 10, 2014) ("Government Defendants' Motion to Stay") (seeking a stay of class certification proceedings because the Government Defendants will be moving to dismiss the *Klayman III* Complaint on these and other grounds).  These defenses, of course, have no relationship to the substantive claims that might be asserted by absent class members; they arise solely from the Plaintiffs' litigation decisions here.  In light of these unique issues, potentially dispositive of Plaintiffs' claims, Plaintiffs cannot satisfy Rule 23(a)(3)'s typicality requirement.

> **C.** **Plaintiffs cannot adequately represent the proposed class as required by Rule 23(a)(4).**

Rule 23(a)(4) provides that "one or more members of a class may sue or be sued as representative parties on behalf of all only if . . . the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel."  *Thorpe*, 2014 U.S. Dist. LEXIS 42605, at *58 (quoting *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).  For the reasons explained below, Plaintiffs here fulfill neither of these criteria.

### 1. Mr. Klayman's dual role as class representative and class counsel would constitute an insurmountable conflict of interest.

"Courts generally forbid class counsel from simultaneously serving as the class representative, finding that the class will not be adequately represented under these circumstances." Rubenstein, Conte & Newberg, *supra*, § 3.77. The Court of Appeals has observed that such a dual role "raise[s] substantial conflict-of-interest questions." *Wagner v. Taylor*, 836 F.2d 578, 596, 597 n.126 (D.C. Cir. 1987) (noting that "[o]ther courts have forbidden the class attorney to serve as the class representative."). In *Wagner*, the Court of Appeals affirmed the district court's denial of class certification, finding that an attorney could not appear *pro se* and simultaneously serve as a class representative. *Id.* at 596–97.

Likewise, in *Graybeal v. American Savings & Loan Association*, 59 F.R.D. 7 (D.D.C. 1973), the court held that the plaintiffs failed to meet Rule 23(a)(4)'s requirements where they placed themselves "in the dual roles of attorneys for, and representatives of, the proposed class." *Id.* at 13. The court noted that "[t]hese dual roles are inherently fraught with potential conflicts of interests," especially in situations where "the attorney is also the representative who brought the action on behalf of the class, and where . . . the potential recoveries by individual members, including representatives, of the class are likely to be very small in proportion to the total amount of recovery by the class as a whole." *Id.* at 13–14. The court emphasized that, in such situations, "[p]laintiffs may stand to gain little as class representatives, but may gain very much as attorneys for the class." *Id.* at 14. Thus, the court concluded, an individual in such a dual role could not adequately protect the rights of absent class members. *Id.*; *see also Shields v. Wash. Bancorp.*, No. 90-1101, 1991 U.S. Dist. LEXIS 14373, at *5–7 (D.D.C. Oct. 10, 1991) (finding a named plaintiff inadequate where that plaintiff had an extensive business relationship with class counsel because "the court [could not] ignore the potential for conflict of interest that might jeopardize

unnamed plaintiffs' interest.").

Importantly, the prohibition on such a dual role does not depend on a showing of any improper motive or actions on the part of the class representative.  The court in *Shields* emphasized that "[i]n holding that the adequacy requirement of Rule 23(a)(4) has not been met . . . the court does not intend in any way to impugn the motives or integrity of either plaintiff or his counsel."  1991 U.S. Dist. LEXIS 14373, at *7–8.  Rather, "the court [found] merely that when . . . the named plaintiff appears to have a conflict of interest, class certification should be denied."  *Id.* at 8; *id* at 8 n. 8 (quoting another court's explanation that "it is the spectre of conflict of interest which moves the court to deny class certification . . . and not the actuality of such a conflict") (citation omitted).

Mr. Klayman's proposed dual role here falls squarely within the above-discussed prohibition—as a class representative attempting to serve as class counsel, he cannot fulfill the requirements of Rule 23(a)(4).  Based on the potential for conflict, this Court should deny class certification.

### 2. Counsel would not adequately represent the putative class.

The Court should also deny class certification because Plaintiffs have not established that they would be "able to vigorously prosecute the interests of the class through qualified counsel."  *Thorpe*, 2014 U.S. Dist. LEXIS 42605, at *58 (quoting *Twelve John Does*, 117 F.3d at 575).  The Court's assessment of the qualifications of class counsel "lies at the heart of the rationale supporting class actions."  *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992) (internal quotation omitted).  This step is crucial "because in certifying a class action, the Court confers on absent persons the status of litigants and 'creates an attorney-client relationship between those persons and a lawyer or group of lawyers.'"  *Palumbo v. Tele-Comm'ns, Inc.*, 157

F.R.D. 129, 133 (D.D.C. 1994) (quoting *Kingsepp*, 142 F.R.D. at 599); *see also Walter v. Palisades Collection, LLC*, No. 06-378, 2010 U.S. Dist. LEXIS 7374, at *30 (E.D. Pa. Jan. 26, 2010) ("The adequacy of representation requirement is of particular importance because inadequate representation would infringe upon the due process rights of absentee class members.") (*quoting Marcus v. Kan. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002)).

"By appointing counsel, [the court] is requiring absentee class members, who did not engage [p]laintiffs' counsel directly, to accept that [p]laintiffs' counsel will faithfully, diligently, and skillfully represent these members' interests." *Walter*, 2010 U.S. Dist. LEXIS 7374, at *35. Indeed, because absent class members will be bound by their actions, "[a]ttorneys in class actions are held to higher standards of competence and diligence than counsel in other lawsuits." *Palumbo*, 157 F.R.D. at 133; *see also Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 11 (D.D.C. 2002) ("a finding that class counsel are adequate is . . . not to be undertaken lightly").

For all of these reasons, "[i]n the class action context, the Court has an obligation to closely scrutinize the qualifications of counsel." *Palumbo*, 157 F.R.D. at 133. "This analysis encompasses careful scrutiny of the 'character, competence and quality of counsel retained.'" *Walter*, 2010 U.S. Dist. LEXIS 7374, at *29 (quoting *Kingsepp*, 142 F.R.D. at 599); *see also* 142 F.R.D. at 600 n.1 (counsel's "competence and integrity are placed directly at issue by 23(a)(4)"). "Prior unethical conduct is a relevant consideration" in this inquiry. *Id.* "Isolated ethical violations ordinarily will not preclude counsel from representing a class, but a history of numerous violations will likely lead a court to find counsel inadequate, especially when other negative factors are present." Rubenstein, Conte & Newberg, *supra*, § 3.79. Thus, "[i]n assessing the adequacy of counsel, a court may examine class counsel's conduct in both: (1) prior litigations, and (2) the putative class action before the court." *Walter*, 2010 U.S. Dist.

LEXIS 7374, at *29 (quoting *Kingsepp*, 142 F.R.D. at 599).

> a.       **A body of case law documents Counsel's prior litigation misconduct.**

The Rule 23(a)(4) inquiry requires an assessment of any misconduct by counsel in prior litigation, in addition to counsel's conduct in the putative class action.  *See, e.g., Kingsepp*, 142 F.R.D. at 599.  In *Kingsepp*, for example, the court denied class certification for failure to satisfy Rule 23(a)(4) citing counsel's "failures [in prior litigation] to comply with a variety of court orders, statutory requirements, and the Federal Rules of Civil Procedure."  *Id.* at 602.  Just as in *Kingsepp*, where "[t]here was a body of federal caselaw involving [counsel's] misconduct," *id.* at 600, the same is true here.

Specifically, the case law chronicling putative class Counsel's litigation misconduct spans decades and jurisdictions, and precludes any conclusion that Counsel would adequately represent the proposed class here.  Indeed, another judge of this Court recently issued severe sanctions based on Counsel's "consistent pattern of engaging in dilatory tactics, his disobedience of Court-ordered deadlines, and his disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court."  *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 139 (D.D.C. 2011) (Kollar-Kotelly, J.).  The Court emphasized: "Klayman's conduct rises to a level and pattern of intransigence and disrespect for the Court's authority that is not often witnessed.  His failures to comply with this Court's orders have been repeated, flagrant, and unrepentant."  *Id.* at 150.

In the *Judicial Watch* case just noted, "in an attempt to secure Klayman's compliance with the Court's orders and to promote his respect for his litigation obligations," over the course of five years, the Court had tried measures from "reminding Klayman of what is expected of him," to "denying his motions without prejudice with leave to refile," to "precluding him from

introducing certain evidence at trial." *Id.* at 139.  However, "Klayman's litigation misconduct . .

. continued unabated." *Id.*  Although the Court in *Judicial Watch* did not attempt to provide an

exhaustive list, *see id.* at 139, the following are just a few examples:

- Following the close of discovery—after the Court had awarded monetary sanctions— Counsel still had not produced documents responsive to the opposing party's outstanding requests. *Id.* at 140–41.  Counsel represented that he would produce the documents by a date certain. *Id.* at 141.  Even after the Court's warning that failure to meet that deadline would occasion further sanctions, Counsel again failed to produce the documents. *Id.*

- After additional sanctions, including being barred from presenting documents in support of his damages claims or his defenses to counterclaims, Counsel still did not produce the documents in question. *Id.* (*see also Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 84 (D.D.C. 2009) (affirming Magistrate Judge's decision to issue sanctions).  Years later, Counsel "still had made no representation that he would ***at any point*** make any efforts" to meet his discovery obligations. 802 F. Supp.2d at 141 (quoting 628 F. Supp. 2d at 96) (emphasis in original) (quotation and alterations omitted).

- After the Court ordered the parties to submit a revised pretrial statement, Counsel ignored the Court deadline. *Id.* at 144.  Instead, on the eve of the deadline, Counsel again sought an extension stating he was otherwise occupied. *Id.* at 145.  After the Court had granted two more extensions, Counsel failed to take any action on the final due date set by the Court, failing even to move for another extension. *Id.*

- Two weeks after the twice-extended deadline for the pretrial submission, Counsel moved for a stay, stating that he would be seeking disqualification of the presiding judge.[11]

In that matter, Counsel was acting *pro se*, so this misconduct did not prejudice a client.

However, the Court found the misconduct was so extreme that "the heart of the Court's concern

[was] the message that condoning Klayman's conduct would send about the integrity of the

judicial system." *Id.*  The Court found that "[b]ased upon its years of experience . . . . having

witnessed firsthand Klayman's long and established pattern of disobeying court orders . . . a

severe sanction [was] necessary to protect the integrity of the judicial system." *Id.*

---

[11] During the course of that litigation, Counsel also exhibited an "uncivil tone," that "culminat[ed] in his wildly speculative attacks on the integrity of [the Court and Magistrate Judge]," accusing [them] of colluding together to intentionally deny Klayman his fair day in court." *Id.* at 93, 94.  Counsel raised these allegations "without citation to any facts or evidence." *Id.*

Two other courts in unrelated cases have barred Counsel from appearing before them in *any* litigation. In *Baldwin Hardware Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550 (Fed. Cir. 1996), the Federal Circuit affirmed the order of the trial court in the Central District of California imposing sanctions against Counsel, including an "order permanently prohibiting Mr. Klayman from appearing *pro hac vice* before the trial judge . . . in any future litigation." 78 F.3d at 554. The trial court further required Counsel to attach a copy of its sanctions order to any future applications for *pro hac vice* admission in the Central District of California. *Id.* at 561. The court in *Baldwin Hardware* sanctioned Counsel "for failure to comply with local rules," as well as "for unreasonably and vexatiously multiplying the proceedings." *Id.* at 554. As in *Klayman v. Judicial Watch, Inc.*, *supra*, "[p]retrial proceedings, particularly discovery proceedings . . . were marked by [Counsel's] delays in complying, or failure to comply, with the court's rules and orders." 78 F.3d at 554. For example, Counsel had submitted an *ex parte* application for an extension of time to oppose a summary judgment motion three days after the due date had passed, solely based on "extensive business travel and the errors of an associate at [his] firm." *Id.* "Over the course of the trial, [the court] admonished Mr. Klayman several times concerning his conduct of the proceedings." *Id.* at 555. Like in *Klayman v. Judicial Watch, Inc.*, the court's warnings went unheeded.

On appeal, the Federal Circuit noted that the trial court's order "[made] clear that the trial judge considered Mr. Klayman to have acted in bad faith, in particular by making certain misrepresentations to the Court." *Id.* at 562 (citing, as one example, Counsel's representation that he had never been sanctioned, although his former firm had in fact been sanctioned in a matter that Counsel and two other attorneys had handled). But Counsel's misconduct continued even as he appealed the sanctions. The Federal Circuit observed that "[t]hroughout [the] appeal,

appellants have":

- "taken considerable liberties with the record and mischaracterized statements therein;"

- "peppered the court with motions seeking a free transcript that do not acknowledge or comply with the [statutory standards];"

- "failed to file a timely Reply Brief despite an extension and then attempted to insert their arguments on reply in their transcript access motions; and"

- "most deplorably, launched a charge of financial bias and conflict of interest against a district judge while utterly failing to mention, much less address, the provisions of law governing that serious allegation."

*Id.* at 563.

The Second Circuit, on two occasions, has expressed similar dismay at Counsel's conduct, and has likewise affirmed an order permanently prohibiting Counsel from appearing *pro hac vice* before a trial judge in the Southern District of New York.[12]  *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 138 F.3d 33 (2d Cir. 1998).  The first time the trial court sanctioned Counsel in *MacDraw*, the trial court noted that it was "deeply troubled" by meritless claims Counsel had pursued; *inter alia*, it was "apparent that [Counsel] engaged in little or no preliminary factual and legal investigation before bringing [a motion for partial summary judgment]."  1994 U.S. Dist. LEXIS 363, at **61–62 (S.D.N.Y. Jan. 18, 1994).  The Second Circuit vacated the sanctions, but only because the trial court's "identification of [the sanctionable conduct] was not sufficiently specific."  138 F.3d at 35.  The Second Circuit "specifically did not hold that Klayman's conduct was not sanctionable," *id.*, and noted its "sympathy with the district court's frustration."  *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*,

---

[12] Indeed, the Second Circuit commented on Counsel's conduct in *Baldwin Hardware Corp. v. Franksu Enter. Corp.* as well: "Disturbingly, Klayman on appeal accused the district judge of being anti-Asian and anti-Semitic." *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.* 138 F.3d 33, 38 n.3 (2d Cir. 1998).

73 F.3d 1253, 1262 (2d Cir. 1996). Like in *Baldwin*, even as Counsel appealed the entry of sanctions, the appellate court observed that Counsel "submitted briefs that included inaccurate characterizations of the record and comments that [the court] consider[ed] entirely inappropriate." *Id.*

When the case returned to a new judge in the trial court, Counsel's improper behavior continued. *See* 994 F. Supp. 447 (S.D.N.Y. 1997), *aff'd*, 138 F.3d 33 (2d Cir. 1998). In addition to "questionable lawyering, the taking of specious positions, and the wasting of resources of the parties and the Court," *id.* at 457, Counsel now accused the court of bias based on the judge's race, purported to advise the court on the canons of judicial ethics, and told the court to "search [the court's] soul." *Id.* at 448. Further, rather than apologizing for such behavior, Counsel "resorted to mischaracterizing and misrepresenting the record in an effort to justify [his and his co-counsel's] actions." *Id.* at 459. The court found, "by clear and convincing evidence, that [Mr. Klayman and his co-counsel], and in particular Mr. Klayman, engaged in undignified and discourteous conduct that was both degrading to the Court and prejudicial to the administration of justice." *Id.* at 455. As a sanction, the court revoked Counsel's *pro hac vice* admission and prospectively barred Counsel from appearing in that judge's court again. *Id.* at 460. The court further required Counsel to attach a copy of that sanctions order to any future application for *pro hac vice* admission in the Southern District of New York. *Id.* The Second Circuit affirmed those sanctions, observing that an attorney had even been disbarred for similar conduct. 138 F.3d at 38 (citing *In re Evans*, 801 F.2d 703, 704–06 (4th Cir. 1986) (affirming sanction of disbarment)).

Despite the severe sanctions affirmed in the Federal and Second Circuits, subsequent case

law documents that Counsel has continued to engage in sanctionable conduct.[13]  *See, e.g.,*

*Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999) (Lamberth, J.) (noting Counsel's repeated

disregard of the Local Rules of this Court, and observing that Counsel "apparently misread (or

never read)" the applicable Local Rule); *Alexander v. FBI*, 186 F.R.D. 144 (D.D.C. 1999)

(Lamberth, J.)  (sanctioning Counsel for misrepresentations to the Court and opposing counsel);

*Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 159 F. Supp. 2d 763, 764 (D.D.C. 2001)

(Robertson, J.) (noting that Counsel's conduct was sanctionable); *Klayman v. Freedom Watch,*

*Inc.*, No. 07-22433, 2009 WL 4782122 (S.D. Fla. Dec. 4, 2009) (sanctioning Counsel for

discovery misconduct); *Klayman v. Barmak*, No. 08-1005, 2009 WL 4722803 (D.D.C. Dec. 4,

2009) (Bates, J.) (sanctioning Counsel for discovery misconduct); *Fla. Bar v. Klayman*, No.

SC11-247, Report of Referee (Aug. 11, 2011) (disciplining Counsel for failure to pay client a

sum awarded in mediation after Counsel failed to provide services to client in a criminal case);

*Forras v. Rauf*, No. 111970/2010, 2012 WL 7986872 (N.Y. Sup. Ct. Sept. 26, 2012) (sanctioning

Counsel for unexplained failure to appear at oral argument).  Another Judge of this Court

observed that Counsel's sanctionable conduct appeared to have been "done quite deliberately,

and with some malicious glee." *Judicial Watch of Fla., Inc.*, 159 F. Supp. 2d at 764.

An individual litigant pursuing her own claims may assume the risk of retaining an

attorney notwithstanding "a body of federal caselaw involving [that attorney's] misconduct,"

*Kingsepp*. 142 F.R.D. at 600.  Such an individual would be on notice that she might well suffer

the consequences of Counsel's "disobedience of Court-ordered deadlines, and his disregard for

the Federal Rules of Civil Procedure and the Local Rules of this Court," among other

---

[13] Case law documents misconduct preceding those orders as well.  For example, in *Wire Rope Importers' Association*, No. 93-04-00221, 1994 WL 235620 (Ct. Int'l Trade May 26, 1994), the court sanctioned Counsel for his violation of United States Court of International Trade Rule 11, "essentially the same provision as Rule 11 of the Federal Rules of Civil Procedure."

professional failings.  *Klayman, Inc.*, 802 F. Supp.2d at 138; *see, e.g.*, *MacDraw,* 1994 U.S. Dist.

LEXIS 363, at **61–62; *Forras*, No. 111970/2010, 2012 WL 7986872; *Klayman*, 628 F. Supp.

2d at 93–94; *Fla. Bar v. Klayman*, No. SC11-247, Report of the Referee at 2 (Aug. 11, 2011).

But absent class members cannot make that assessment, and the Court's examination under

23(a)(4) is designed to spare absent class members the fate that befell two named plaintiffs in

*Alexander v. FBI*, against whom the Court granted summary judgment based on Counsel's

failure to investigate the threshold question of whether they had standing to pursue their putative

class claims, *see* 186 F.R.D. 180, 185 (D.D.C. 1999) (Lamberth, J.) (noting Counsel had pursued

"depositions of several newsworthy deponents but . . . neglected to obtain information such as

whether [clients were] even the proper plaintiffs").  Especially in light of the "heightened

standard" to which class counsel are held, "[p]recisely because of the responsibility to absent

class members," *Palumbo*, 157 F.R.D. at 133, this Court should find that Counsel does not meet

the qualifications required of class counsel under Rule 23(a)(4).

> **b.     Counsel's handling of this action confirms that Counsel would not adequately represent the putative class.**

In addition to reviewing past litigation conduct in assessing whether Counsel fulfills Rule

24(a)(4)'s requirements, the Court also should examine class counsel's handling of the putative

class action before the court.  *See, e.g., Walter*, 2010 U.S. Dist. LEXIS 7374, at *29 (quoting

*Kingsepp*, 142 F.R.D. at 599).  In *Kingsepp*, although counsel's misconduct in prior litigation

was sufficient to preclude certification, the court observed that counsel's handling of that action

constituted an "independent basis for concluding that he [wa]s not adequate counsel." 142 F.R.D.

at 602.  Specifically, the court cited deficiencies in two sets of legal memoranda counsel had

filed, including the motion for class certification and the reply in support thereof.  *See id.* at 602–

03.  Counsel's submissions consisted largely of quotations and conclusory statements, and failed

to present analysis or discussion regarding the issues raised by the opposing party.  *See id.*  On that basis, too, the court found that counsel would not adequately represent the interests of the putative class.  *See id.*

Among the factors affecting the quality of representation Counsel would provide to the putative class, the Court should also consider "[t]he resources counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(4), both pursuant to Rule 23(a)(4) and under Rule 23(g)(4).  *See, e.g., Lindsay v. Gov't Employees Ins. Co.*, 251 F.R.D. 51, 58 (D.D.C. 2008) (assessing putative class counsel under both 23(a)(4) and 23(g)).  In *Walter*, 2010 U.S. Dist. LEXIS 7374, where the two putative class attorneys' prior ethical lapses were less severe than those described in *Kingsepp*,[14] the court found that those lapses, combined with the resources available to counsel and their relative lack of experience with recent class action litigation, rendered certification improper under Rule 23(a)(4).  2010 U.S. Dist. LEXIS 7374, at *29–36. In particular, the court expressed concern that putative class counsel were the sole attorneys in a two-person firm, and their entire clerical staff consisted of two paralegals.  *Id.* at *32–33 (noting counsel had considered joining with another firm upon certification of the putative class).  The court found that, "[b]ased upon these circumstances, . . . counsel [was] ill-equipped to handle a class composed of thousands of plaintiffs nationwide."  *Id.* at *33.

Here, this Court should deny certification based both on Counsel's handling of this action to date and based on the resources Counsel would appear to be prepared to commit to

---

[14] In *Walter*, two attorneys, Mr. Eisenberg and Ms. McCullough, served as putative class counsel.  2010 U.S. Dist. LEXIS 7374, at *30.  Mr. Eisenberg had been temporarily disbarred for an issue related to client funds, and later sanctioned or reprimandad on three occasions, while Ms. McCullough had participated in Mr. Eisenberg's unlicensed practice of law during his period of disbarment and had been ordered to return fees received from a client on one occasion. *See id.* at *30–32.

representing the class.  To begin with, Counsel has repeatedly ignored the Local Civil Rules in this action.[15]

For example, Counsel has failed to comply with Local Civil Rule 23.1(b)'s requirement that a party move for class certification within ninety days of filing a complaint.  *See* LCvR 23.1(b).  Before bringing *Klayman III*, Counsel had filed two related actions that reflected his "intention to bring both suits as class actions."  *Klayman*, 957 F. Supp. 2d at 7 n.3; *see* Complaint, Civ. No. 13-851, ECF No. 1 (June 6, 2013) ("*Klayman I* Complaint"); Complaint, Civ. No. 13-881, ECF No. 1 (June 12, 2013) ("*Klayman II* Complaint").  In both cases, Counsel failed to move for class certification within ninety days of filing the complaint.  Instead, two to three weeks after the time provided by Local Civil Rule 23.1(b) had expired, and without acknowledging, much less explaining, the failure to comply with the rule, Counsel filed motions for extensions of time to move for class certification.  *See* Motion for Extension of Time to Certify Class Action, Civ. No. 13-851, ECF No. 7 (Sept. 30, 2013); Motion for Extension of Time to Certify Class Action, Civ. No. 13-881, ECF No. 6 (Sept. 30, 2013).  Counsel moved for such extensions four times.  *See* 957 F. Supp. 2d at 7 n.3.  The Court did not grant any of them. On January 15, 2014, Counsel submitted a praecipe stating that Plaintiffs would not be pursuing either case as a class action, but would instead file a separate suit "to streamline and to expedite these two cases."  Plaintiffs' Praecipe Regarding Class Actions, Civ. No 13-851, ECF No. 71,

---

[15] Indeed, as in *Kingsepp*, the Plaintiffs' Motion for Class Certification is evidence in itself that Counsel would not adequately represent the interests of the class.  *See* 142 F.R.D. at 602–03. The inadequate submission in *Kingsepp* was problematic because it was conclusory and presented quotations rather than analysis.  *See id.*  Here, Plaintiffs' Motion for Class Certification fails to identify a single proposed class definition with which to begin any analysis, in addition to containing discussion similar to that found inadequate by the court in *Kingsepp*, such as saying nothing about satisfaction of Rule 23(b)(2) beyond quoting the contents of its text.  *See* Plaintiffs' Motion for Class Certification at 2.

Civ. No. 13-881, ECF No. 54 (Jan. 15, 2014).  Shortly thereafter, Counsel filed the *Klayman III*

Complaint, stating claims nearly identical to those asserted in the *Klayman II* Complaint.  As the

Government Defendants noted in their Motion to Stay Class Certification Proceedings Pending

Resolution of the Government Defendants' Rule 12(b) Motion, ECF No. 9 (Apr. 10, 2014)

("Government Defendants' Motion to Stay"), the only conceivable reason for bringing this new

action, rather than pursuing class claims in one of the two already-pending cases, is to evade the

application of Local Civil Rule 23.1(b).

Moreover, as discussed in the Government Defendants' Motion to Stay Class

Certification, Counsel's attempt to evade Local Civil Rule 23.1(b) by filing a new, nearly-

identical complaint has left the putative class vulnerable to a motion to dismiss on the basis that

this action constitutes claim-splitting.  Thus, Counsel's failure to follow the local rules has

exposed the putative class to a risk that this action could be dismissed altogether.  Such

representation falls far short of the "heightened standard" to which class counsel are held.

*Palumbo*, 157 F.R.D. at 133.

Compounding the repeated failure to follow the Local Rules, even at this early stage in

the litigation, Counsel has demonstrated that he apparently lacks the resources to adequately

represent a putative class in this matter. *See, e.g., Walter*, 2010 U.S. Dist. LEXIS 7374, at *32–

33 (assessing counsel's resources as part of the adequacy inquiry).  For example, in *Klayman I*

and *Klayman II*—before Counsel had decided to abandon the class claims in those cases and file

the *Klayman III* Complaint instead—Counsel moved for a preliminary injunction, *See* Motion for

Preliminary Injunction, Civ. No. 13-881, ECF No. 10 (Oct. 29, 2013), and the Court set a

Scheduling Conference, *see* Minute Order, Civ. No. 13-881 (Oct. 29, 2013).  Counsel moved for

leave to appear telephonically stating he would have "an extremely difficult time traveling back

to Washington D.C. in time for the Status Conference." *See* Motion for Leave to Appear Telephonically, Civ. No. 13-881, ECF No. 14 at 1 (Oct. 30, 2013). After the Court denied that motion, *see* Minute Order, Civ. No. 13-881 (Oct. 30, 2013), and Counsel's motion to continue the Status Conference, *see* Minute Order, No. 13-881 (Oct. 31, 2013) (denying motion to continue), Counsel failed to appear—or make arrangements for anyone else to appear—to represent the putative class's interests. *See* Tr. of Status Conf. 4:4–8 (Oct. 31, 2013) (noting that "for reasons which [the Court] can't understand, Mr. Klayman is neither here nor has made arrangements to have anyone else here in his stead").

At that same Status Conference, the Court noted "it is surprising to [the Court] that [Counsel] thinks he is going to litigate this alone without other counsel to help him." *Id.* at 5:12–14. The Court expressed hope that, "when [Counsel] reviews this transcript, he will start the process of reevaluating how he is going to do this because obviously this is a case that has a lot of parts to it." *Id.* at 5:14–16. These concerns are further grounds to deny class certification here.

## III.    **Plaintiffs cannot meet their burden under Rule 23(b).**

"To obtain class certification, [l]ead [p]laintiffs have the burden of demonstrating that the requirements of Federal Rule of Civil Procedure 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *In re Fannie Mae Secs. Litig.*, 247 F.R.D. 32, 36 (D.D.C. 2008). Because Plaintiffs here cannot fulfill Rule 23(a)'s prerequisites, the Court need not consider whether Plaintiffs can meet the requirements of Rule 23(b). Indeed, Plaintiffs' Motion for Class Certification hardly attempts to shoulder this burden, offering the text of Rule 23(b)(2) as the totality of its discussion on the subject. *See* Plaintiffs' Motion for Class Certification at 2; *see also Klayman*, 802 F. Supp. 2d at 148 ("courts need not resolve arguments

raised in a cursory manner and with only the most bare-bones arguments in support") (citing

*Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997)).  If the Court

nonetheless reaches Rule 23(b), the Court will find that Plaintiffs cannot satisfy the requirements

for certification either under Rule 23(b)(2) or Rule 23(b)(3).

### A.     The overbreadth of the proposed classes and Plaintiffs' requests for money damages render certification under Rule 23(b)(2) inappropriate.

"Rule 23(b)(2) allows class treatment 'only when a single injunction or declaratory

judgment would provide relief to each member of the class."  *DL*, 713 F.3d at 125.  "It does not

authorize class certification when each individual class member would be entitled to a *different*

injunction or declaratory judgment against the defendant."  *Id.* (quoting *Wal-Mart Stores Inc.*,

131 S. Ct. at 2557) (emphasis in original).  "The key to the (b)(2) class is the indivisible nature of

the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be

enjoined or declared unlawful only as to all of the class members or as to none of them."  *Id.*

(quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551).  Moreover, certification under Rule 23(b)(2)

is appropriate for equitable, rather than monetary, relief.  "It is universally held, although with

differences from circuit to circuit, that Rule 23(b)(2) certification is inappropriate where claims

for money damages predominate but permissible if the claim for money damages is 'incidental'

to the claim for equitable relief."  *Love v. Veneman*, 224 F.R.D. 240, 245 (D.D.C. 2004).

Here, certification under 23(b)(2) is inappropriate both because 1) there is no injunctive

or declaratory remedy that would extend to all class members in any of the six putative classes;

and because 2) Plaintiffs seek substantial monetary damages far beyond anything that could be

construed as "incidental" to their equitable claims.  There is a fundamental mismatch between

the proposed class definitions and the relief Plaintiffs seek.  As explained above in Section II.A,

the putative class definitions are so hopelessly overbroad that these classes would sweep in

countless persons without reference to whether those individuals were affected by—or had any connection with—any of the challenged NSA programs.  For example, the first two proposed classes include people who knowingly and voluntarily provided electronic information as part of any federal law enforcement investigation, while the remaining four classes include anyone who claimed that any constitutional right at all had been violated with respect to their electronic information, regardless of the Government action from which the alleged harm stemmed.  *See id.*  Any injunctive relief the Court granted related to the challenged NSA programs would not reach such individuals.

Moreover, although Plaintiffs' Motion for Class Certification here mentions only "declaratory and injunctive relief" in its introduction, it goes on to list entitlement to "compensatory, statutory and punitive damages, whether as a result of Defendants' illegal conduct, and/or otherwise" among the questions claimed as common to the class.  Plaintiffs' Motion for Class Certification at 1, 5.  As framed, especially in light of the open-ended "and/or otherwise" language and the inclusion of punitive damages, this question reflects that Plaintiffs seek money damages beyond anything arguably "incidental" to their claims.  In fact, the *Klayman III* Complaint includes a Prayer for Relief demanding, *inter alia*, "compensatory and actual damages . . ., punitive damages . . . and attorney fees and costs in an amount in excess of $20 billion U.S. dollars."  *Klayman III* Compl. ¶¶ 57, 64, 72, 73; *see also, id.* ¶¶ 56, 62, 71 (claiming "severe emotional distress and physical harm, pecuniary and economic damage, loss of services, and loss of society").  This significant sum and the intention to pursue compensatory, actual, and punitive damages render certification under Rule 23(b)(2) inappropriate here.

### B. Plaintiffs also cannot satisfy the predominance and superiority requirements of Rule 23(b)(3).

To proceed under Rule 23(b)(3), Plaintiffs must prove that (1) common questions

"predominate over any questions affecting only individual members"; and that (2) class

resolution is "superior to other available methods for the fair and efficient adjudication of the

controversy." *In re Fannie Mae Secs. Litig.*, 247 F.R.D. at 36–37 (internal quotation omitted).

This inquiry includes, among other factors, "the difficulties likely to be encountered in the

management of a class action." *Id.* at 37 n.3 (quoting Fed. R. Civ. P. 23(b)(3)).[16]

 Plaintiffs here can show neither predominance nor superiority.  To begin with, Rule

23(b)(3)'s predominance criterion is far more demanding than the commonality requirement of

Rule 23(a).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  Thus, where the overbreadth

of the proposed class definitions placed class members beyond the reach of even a *single*

common question, *see* Section II.A (discussing Rule 23(a)(2))*,* Plaintiffs cannot fulfill 23(b)(3)'s

heightened requirement that common issues predominate.

 Similarly, classes proceeding under Rule 23(b)(3) must be more precisely defined than

those under Rule 23(b)(2).  "A high level of precision in defining class membership is necessary

. . . because all class members must be identified in order to notify each of his or her opt-out

rights, and, later, to distribute monetary relief." *Thorpe*, 2014 U.S. Dist. LEXIS 42605, at *59;

*see also id.* ("critical question is whether class membership 'can be ascertained' with reference to

'objective criteria'") (quoting Rubenstein, Conte & Newberg, *supra*, § 3.7).  For all of the

reasons explained in Sections I and II.A above, Plaintiffs cannot meet this standard.  And, for the

---

[16] Analysis under Rule 23(b)(3) also includes "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class" and "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." *Id.* at 37 n.3 (quoting Fed. R. Civ. P. 23(b)(3)).  As noted above, multiple pending cases brought by individuals who would be included in Plaintiffs' putative class (or classes), and challenging alleged NSA surveillance programs in this and other fora, *see* 957 F. Supp. 2d at 7 (noting cases pending in New York, California, and Idaho), also weigh against class certification in this setting. *See Yamasaki*, 442 U.S. at 702 (cautioning that "a federal court when asked to certify a nationwide class should take care to ensure . . . that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts").

same reasons, class resolution would be neither a fair nor efficient way to litigate Plaintiffs'

claims, as, among other things, the class definitions depend on vague terminology, and, for four

of the definitions, an ultimate determination on the merits.  As explained, identifying the parties

to the action who would be bound by the Court's decision would prove immediately

unmanageable, even before the Court took up the Plaintiffs' inherently individualized claims of

"severe emotional distress and physical harm, pecuniary and economic damage, loss of services,

and loss of society." *Klayman III* Compl. ¶¶ 56, 62, 71.  For all of these reasons, Plaintiffs cannot

establish that class resolution is superior to other available methods.

## CONCLUSION

For all of these reasons, the Government Defendants respectfully request that the Court

deny Plaintiffs' Motion for Class Certification.


Dated: April 21, 2014                    Respectfully submitted,

                                         STUART F. DELERY
                                         Assistant Attorney General

                                         JOSEPH H. HUNT (D.C. Bar No. 431134)
                                         Branch Director

                                         ANTHONY J. COPPOLINO
                                         Deputy Branch Director

                                          */s/ James J. Gilligan*
                                         JAMES J. GILLIGAN
                                         Special Litigation Counsel
                                         MARCIA BERMAN
                                         Senior Trial Counsel
                                         BRYAN DEARINGER
                                         Trial Attorney
                                         RODNEY PATTON
                                         Trial Attorney

_/s/ Julia A. Berman_____
JULIA A. BERMAN (D.C. Bar No. 986228)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 616-8480
Fax: (202) 616-8470

_Attorneys for the Government Defendants_