IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, et. al.,

    Plaintiffs,

v.

BARACK HUSSEIN OBAMA II, et. al.

    Defendants.

Civil Action Number: 14-cv-00092

Judge Richard J. Leon

**PLAINTIFFS' PARTIAL AND INTERIM REPLY TO THE DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO CERTIFY CLASS**

Plaintiffs respectfully submit this partial and interim reply to the Defendants' Memorandum in Opposition of Motion to Certify Class, April 22, 2014, ("Defendants' Opposition to Class Certification" or "Opposition"). As Defendants have moved to stay consideration of the class pending their anticipated motion to dismiss to be filed on June 2, 2014, Plaintiffs reserve their right to supplement this Reply once they are able to review the bases of Defendants' motion to dismiss, which will necessarily deal with class certification issues. Defendants appear to base their Opposition to Class Certification in part on their upcoming motion to dismiss. Plaintiffs' oppose staying this action, as it is yet another attempt by Defendants to delay and obstruct adjudication of the important constitutional issues concerning nearly every American.

Contrary to Defendants' representations in its Opposition, this lawsuit is much broader in scope and substance than their prior related cases (13-cv-851 and 13-cv-881, *Klayman I* and *Klayman II*, respectively), as Plaintiffs have named additional Defendants such as the Central

Intelligence Agency ("CIA") and its director as participating in a joint scheme to compromise and violate the constitutional rights of the class. Specifically, information has come to light publically that the CIA in concert with the National Security Agency ("NSA") is also engaging in this illegal conduct, not just internationally but domestically. Consequently, this case has fundamental differences from *Klayman I* and *Klayman II*, notwithstanding that *Klayman I* and *Klayman II* are no longer class actions.

Plaintiffs' Motion for Certification of Class and the Defendants' Opposition to Class Certification, with supporting Memoranda, cite extensively to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and various precedents. Plaintiffs disagree with how cited precedents are applied to the Complaint and class. To the contrary, Plaintiffs' analysis shows that the same cited authority justifies their Motion.

Defendants object to the class due to "the nature of the allegations made in the Complaint, which put at issue the operational details of alleged intelligence-collection activities." Plaintiffs disagree that they put such operational details at issue. Plaintiffs contend that under constitutionally-limited Government such operational details do not trump the Constitution.

Most of Defendants' Opposition to Class Certification to Plaintiffs' Motion flows implicitly or explicitly from Plaintiffs offering to the Court alternatives for a definition of the class. Most of the Defendants' Opposition to Class Certification evaporates after we strip away those "concerns" by Defendant about different proposed class definitions. If perhaps the Plaintiffs' willingness to be accommodating with the Defendants and Court in finding a workable definition of the class is not appreciated as helpful, then Plaintiffs agree to avoid offering alternatives and now ask the Court to consider only one definition of the class.

Similarly, Defendants offer arguments in the alternative, such that Plaintiffs agree with Defendants' stated legal principles raised in certain areas, but correctly apply those principles elsewhere in the analysis differently, concluding that class certification is in fact justified and appropriate.

Specifically, Defendants oppose the class in part, in one place, on the grounds that classified information might (potentially) be required to determine whether the Government acted lawfully in accessing, recording, or scrutinizing the class members' communications. Yet in another place the Defendants forcefully brief the invalidity of a "fail safe" class dependent upon the ultimate questions of liability. Defendants argue that the definition of the class should be independent of whether the Defendants have actually committed any wrong against the class, including to preserve mutuality of *res judicata*. On the other hand, Defendants oppose class certification on the grounds that determining class membership requires deciding in advance – using classified information – whether or not the Government acted lawfully. The Defendants thus speak out of both sides of their mouths.

Classified information is irrelevant to the definition of the class. That is so because the class should be defined without regard to whether the Defendants acted rightly or wrongly, which is the ultimate question to be decided in litigation by the class against the Defendants.

Also, Defendants suggest that the withdrawal of requested class certification in cases known as *Klayman I* and *Klayman II* imply that this case *Klayman III* does not qualify for class certification. Plaintiffs note that class certification was withdrawn in those earlier cases for the very purpose of pursuing it more vigorously here and now in this case *Klayman III* and for other litigation reasons, not due to any lack of certainty that a class action is appropriate here.

Defendants object to counsel Larry Klayman representing the class while being a member of it. Unfortunately, it would be difficult and maybe impossible to find any lawyer in the United States who is not a member of the class, given that lawyers are typically heavy users of communications services and frequently in actions adverse to some level of government. Also, the requirement that class members be similarly situated eliminates a conflict of interest.

Plaintiffs do not disagree with the legal principles cited that the definition of the class must be "definite" and "ascertainable." Plaintiffs also agree with Defendants that "The level of precision required varies depending on the type of class sought to be certified under Rule 23(b)." *Thorpe v. Dist. of Columbia*, Civ. No. 10-2250, 2014 U.S. Dist. LEXIS 42605, at *58 (D.D.C. Mar. 29, 2014) (internal quotation omitted).

Here, unfortunately, the conduct of the Government that is beyond dispute is massive. The only questions are whether the conduct that is known is legally permissible under the U.S. Constitution and/or within the authorization of applicable laws. But the vastness of the class is driven by the vastness of the Government's actions, in some respects undisputed.

Plaintiffs' redefined the class definition with specificity and tailored it to a related class action lawsuit styled *Paul et al v. Obama et al*, Civil Action No. 1:14-cv-00262 as the court will undoubtedly certify consistent class definitions in both related cases: **All American citizens who made or received a cellular or landline telephone call that originated or terminated in the United States after May 1, 2006 and/or all American citizens who engaged in or accessed the Internet and/or social media with computers, tablets, cell phones or other electronically capable devices using Google, Yahoo!, Facebook, PalTalk, YouTube, Skype, AOL, Apple, Verizon, AT&T and Sprint after May 1, 2006 including those users of the Internet who have not identified themselves to the service provider by registering, subscribing, or**

4

**opening an account with the service provider, such that the service provider is unable to identify the user.**

Plaintiffs contend that the discoverable customer records of these service providers will precisely define the class without ambiguity. Defendants argue that the public will not be able to discern if they are in the class or not. But this might be so only due to their ability to remember their usage, whereas the service provider's records should be precise.

**Counsel Does Not Have a Conflict of Interest in Representing the Class**

Defendants object to counsel Larry Klayman representing the class while being a member of it. Unfortunately, it would be impossible to find any lawyer in the United States who is not a member of the class, given that lawyers are typically heavy users of communications services and frequently in actions adverse to some level of government and often communicating with accused criminals as defendants, and thus more likely than the average citizen to be involved in communications of interest, prompting screening for content.

Initially, many attorneys have come forward willing to assist in this litigation. There are other attorneys who could either substitute for Larry Klayman or serve as additional professional perspective within the litigation. However, unless from May 2006, they never have used communications technology within the United States, they would also be members of the class.

Unless Larry Klayman or another attorney opts out of the class (*see* FRCP 23 (c)(2)(B)(v)), a vast number of U.S. citizens who believe they have been wronged will be left with no remedy at all. The courts would not be well served by millions of lawsuits.

Defendants cite *Wagner v. Taylor*, 836 F.2d 578, 9 Fed.R.Serv.3d 1055 (D.C. Cir. 1987) for the proposition that Wagner's role as both attorney for the class and a member of the class

"raised substantial conflict-of-interest questions implicating the propriety of Wagner to serve as class representative."  But questions raised are not questions answered.

The nature of the putative conflict suggested is this: "the potential recoveries by individual members, including representatives, of the class are likely to be very small in proportion to the total amount of recovery by the class as a whole." *Graybeal v. American Savings & Loan Association*, 59 F.R.D. 7, 13-14 (D.D.C. 1973).  That Court continued that "[p]laintiffs may stand to gain little as class representatives, but may gain very much as attorneys for the class." *Id.* at 14.

However, here, first, this Court will necessarily approve, modify, or disapprove any award of compensation to the attorney representing a class in a class action.  *See* FRCP 23(h).  Therefore, where this Court plays an independent supervisory role in governing compensation to class counsel, the suggested conflict disappears, particularly where the Court's decision on compensation occurs after the conduct of the litigation, not before.  Counsel must perform during the litigation so as to warrant a favorable review after the fact from the Court under FRCP 23(h).

The "concerns" raised against Larry Klayman as a member of the class serving as counsel representing the class should be dismissed or perhaps deferred to the compensation stage.  Consider, for example, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006), in which that Court dealt with a different kind conflict of interest with the class counsel at the compensation stage by reducing the requested fee award.  This illustrates the ability to address concerns at the time of awarding compensation.

Second, the District of Columbia Court of Appeals emphasized that the lower court's decision on certification of a class is normally not reviewable on appeal, but is discretionary. *Id.* at paragraph 11; *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 480-482, 98 S.Ct.

2451, 2453-2454, 57 L.Ed.2d 364, 367-368 (1978). Class certification is procedural not substantive.

Third, in *Wagner* the Court of Appeals' approval of the lower court denying certification was clearly grounded on the fact that "Wagner had three different attorneys and, in addition, has represented himself in the District Court and acted pro se in this court." *Wagner,* 836 F.2d 578 at 595. And also Wagner had filed factual affidavits as evidence as a member of the class. As a result, the "District Court's experience with Wagner's three attorneys and his current pro se status could hardly leave room for a contention that the District Court abused its discretion . . ." *Id* at 596.

Fourth, the Defendants' Opposition to Class Certification is misplaced in confusing the certification of the class with the question of class counsel. Pursuant to FRCP23(g), this Court has the authority and role of appointing "class counsel." Larry Klayman seeks appointment based upon his proven expertise, unquestioned commitment and considerable experience in addressing government misconduct through litigation.

This Court should separate consideration of certifying a class under FRCP 23(c) from appointing class counsel under FRCP 23(e). Presumably the Court may make such orders as will allow the class to benefit from Klayman's expertise in this kind of litigation with additional attorneys also participating to the extent the Court deems appropriate.

Furthermore, the requirement that class members be similarly situated largely eliminates a conflict of interest in most respects. Comment [25] to American Bar Association Model Rule 1.7 of the Model Rules of Professional Conduct (added February 2002) provides as follows:

> [25] When a lawyer represents or seeks to represent a class of
> plaintiffs or defendants in a class-action lawsuit, unnamed members
> of the class are ordinarily not considered to be clients of the lawyer
> for purposes of applying paragraph (a)(1) of this Rule. Thus, the

7

>lawyer does not typically need to get the consent of such a person before representing a client suing the person in an unrelated matter. Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated matter.

**Plaintiffs' Counsel Is Qualified to Represent the Class**

Predictably, the Obama Justice Department, which serves as counsel for the Defendants, devotes six pages of its Opposition to waging a personal ad hominem attack on Plaintiffs' counsel, allegedly because he has locked horns with some judges over his thirty-seven years as a lawyer, and they claim that he should not be allowed to participate in this case. To the contrary, given the nature of this case, which deals with the most outrageous, unethical, unlawful and unconstitutional government conduct in American history, Plaintiffs' counsel is more than experienced and suited for this case.

After seventeen years of legal practice both as a U.S. Justice Department prosecutor who represented a number of federal agencies and who was on the Antitrust Division trial team that succeeded in breaking up AT&T and creating competition in the telecommunications industry, as well as being a litigator in private practice, in 1994, Plaintiffs' counsel conceived of, founded, and ran a government ethics organization which he named Judicial Watch. Over the course of the next ten or so years, he successfully litigated a number of cases and developed such a reputation for taking on corruption in government that even the NBC television series "West Wing" created a character after him, which it named Harry Klaypool of Freedom Watch. *See* www.freedomwatchusa.org. Indeed, Plaintiffs counsel is the only lawyer in American history who succeeded in having a court rule that a president of the United States had committed a crime when he released the Privacy Act protected file of a woman Bill Clinton had allegedly harassed in the Oval Office, Ms. Kathleen Willey. The Honorable Royce C. Lamberth of this Court

handed down this ruling in the context of a civil discovery dispute. *See Alexander v. Fed. Bureau of Investigation*, 193 F.R.D. 1 (D.D.C. 2000).

During his tenure at Judicial Watch, which he left to run for the U.S. Senate in Florida in 2003, Plaintiffs' counsel was instrumental in uncovering the infamous Chinagate or campaign finance scandal in a case before this Court styled *Judicial Watch v. U.S. Department of Commerce*, 83 F. Supp. 2d 105 (D.D.C. 1999) and litigated and uncovered information and obtained remedies in the public interest concerning a number of other government scandals, including but not limited to Filegate, Travelgate and E-Mailgate (which concerned the suppression of email evidence by the Clinton White House.) After the Senate campaign, Plaintiffs' counsel founded his current organization Freedom Watch, which also specializes in government litigation. It was during this time that he filed not only this class action, but also two other related cases styled Civil Action Nos. 13-cv-851 and 13-cv-881(*Klayman I and Klayman II*). In *Klayman I*, Plaintiffs' counsel convinced this Court to enter a preliminary injunction against the Defendants herein, for engaging in an "almost Orwellian" violation of Fourth Amendment constitutional rights. This was no small victory, and may represent the biggest defeat for the federal government in American history. Attached as Exhibit 1 are profiles and articles setting forth Plaintiffs' counsel's history of successful government litigation.

Few if any attorneys in this nation have taken such strong and aggressive action against corruption in government, not just because most lawyers are more interested in the lucrative nature of private practice, but also most likely because of the inherent risks involved both personally and professionally.

Given Plaintiffs' counsel's reputation for taking strong stands, it is not surprising that in his thirty-seven year legal career he has locked horns with some judges.

Two of those judges, the Honorable William D. Keller and Denny Chin which the Obama Justice Department references in its Opposition, Plaintiffs counsel has written about in his autobiography. The experience with Judge Keller (*see Frank Su v. Baldwin Hardware Corp.*, 92-cv-1077) was the catalyst which caused Plaintiffs' counsel to found Judicial Watch. The later experience with Judge Chin was likely the result of highly politicized and charged times when Plaintiffs' counsel had uncovered that Chin had been recommended for the federal bench by Chinese spy John Huang and then nominated by President Bill Clinton. Chin took offense when Plaintiff's counsel inquired about this in a private case. *See* pages from Plaintiffs' autobiography attached as Exhibit 2, which explains the circumstances involved.

Later, Plaintiffs' counsel had a number of differences with a judge of this Court, the Honorable Colleen Kollar-Kotelly, who he was forced to move to disqualify for her unethical conduct and extra-judicial prejudice toward him and his client Elham Sataki. When judicial ethics panels failed and refused to take remedial action, Plaintiffs' counsel, as this Court is aware since the case was randomly assigned to it, filed suit. This litigation remains pending in the federal appellate courts and is now subject to Supreme Court review. *See Klayman v. Kotelly*, 1:11-cv-01775.

The bottom line, without belaboring or dignifying the ad hominem attack on Plaintiffs' counsel, is this: he has been – as the attached certificates attest (Exhibit 3) – a member in good standing of the Bar of the District of Columbia and this Court, as well as The Florida Bar, and all other courts as a whole, since he first was inducted as a lawyer in 1977. He has never been suspended from the practice of law for even one day. And, the District of Columbia Bar, which, thanks to the allies of President Bill Clinton, was asked to review the sanctions of Judges Keller (and others), found that Plaintiffs' counsel had acted ethically. Exhibit 4.

Ironically, the ultimate legal counsel for the Obama Justice Department in this case, Attorney General Eric Holder, has been involved and implicated in a number of scandals during both the Clinton and now Obama administrations; everything from selling pardons, to Fast and Furious, Benghazi as well as perjuring himself before Congress. Thus, one can equate this to the pot calling the kettle black, since Plaintiffs' counsel has never engaged in this type of illegal, egregious conduct and has a good reputation for acting ethically and competently over the course of his legal career as a public interest advocate who has taken on large powerful establishment interests. In short, Plaintiffs counsel is well suited and qualified to represent the class herein.

**Plaintiffs Meet the Burden Their Burden under Rule 23(b)**

Defendants also oppose class certification – separate from how the class is defined – on the grounds that a class could not satisfy FRCP Rule 23(b).

Plaintiffs disagree with how the Defendants perceive the lawsuit.  There must be no confusion: One practice Plaintiffs challenge as unconstitutional is the Foreign Intelligence Surveillance Court ("FISC") authorization for intercepting the communications of a massive group without probable cause for any individual impacted. But the practice of massive group-wide warrants touching sometimes millions of people is a single question of constitutional law affecting the entire class uniformly.

The shared factor common to all class members is that mass-interception and/or mass-collection of Plaintiffs' communications by the Government without a judicial warrant particularized and specific to the individual or without probable cause concerning each individual affected violates the U.S. Constitution.  Plaintiffs similarly assert that the Government's actions are beyond what is authorized by the statutes relied upon. But these are questions of law, perhaps of pure law, affecting the entire class in exactly the same way.

11

Rule 23(b) of the FRCP provides three separate provisions presented as subsections (a), (b), **_OR_** (c). FRCP Rule 23(b)(1) states:

> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> * * *

Clearly, the proposed class is justified under FRCP Rule 23(b)(1). If the Court decides the constitutionality of Defendants' actions, this will consist largely of only a single or at most a few questions of law, perhaps of pure law. A single class action can decide this.

On the other hand, individual lawsuits by perhaps millions of individuals would create the risk of inconsistent or varying adjudications. FRCP Rule 23(b)(1)(A). This might subject the Defendants to inconsistent or incompatible obligations in response. *Id.*

**A. Claimed overbreadth of the proposed classes and Plaintiffs' requests for money damages rendering certification under Rule 23(b)(2) inappropriate.**

Although Plaintiffs contend that satisfying FRCP Rule 23(b)(1) by itself is sufficient, Defendants incorrectly argue that the proposed class cannot satisfy FRCP Rule 23(b)(2):

> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
> * * *
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

The Defendants argue in their Opposition that "there is no injunctive or declaratory

12

remedy that would extend to all class members in any of the six putative classes . . ."

Plaintiffs allege that Defendants acted unconstitutionally in the same way(s) with regard to all members of the class. Exactly the same declaratory relief that such conduct is unconstitutional and an injunction against it will be appropriate for the entire class as a whole. There appear to have been several methods by which Defendants unlawfully intercepted Plaintiffs' communications. But the unconstitutionality of those practices is a common question.

Again, Defendants misconceive this lawsuit. The federal courts can declare that the indiscriminate interception and collection of communications without individualized probable cause and without a warrant particularized to the individual violates the U.S. Constitution. This follows *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2547-48 (2011). The U.S. Supreme Court found that *Wal-Mart* had no common discriminatory policy governing all employment decisions, but that a general policy likely would satisfy FRCP 23. Here, Plaintiffs allege a universal policy to systematically intercept, collect, and store all communications of the entire class. Defendants' blanket policy is a common question to be resolved.

Defendants cite precedents in their Opposition Section II (A) arguing that pleading generic violation of a statute is not specific enough to identify a class, because there might be many ways that a statute can be violated. Those precedents teach that alleging the violation of a statute is too vague without specifying in factual terms exactly how the statute was violated. But Plaintiffs here pin down that precise conduct by which Defendants violate the U.S. Constitution. Plaintiffs allege that by Defendants' indiscriminate interception and/or collection of Plaintiffs' communications Defendants violate the U.S. Constitution.

Defendants suggest – as one example – that a class might "include people who knowingly and voluntarily provided electronic information as part of any federal law enforcement

13

investigation" (Opp. at 41). Plaintiffs contend that if on some occasions individuals voluntarily provided information this would have nothing to do with other occasions when the Government indiscriminately collected communications unlawfully. The Defendants would probably be not guilty or liable for the former while guilty or liable for the latter – as to the same members.

As Defendants argue in Section I (D) (Opp. at 16) about a "fail safe" class, certification of a class is a different question from the Plaintiff class actually proving liability. If Defendants indiscriminately collected communications from those same persons without a warrant or probable cause, Defendants would be liable for those acts, though not liable for other acts. Defendants would not be liable for information provided voluntarily.

Defendants also argue that the proposed class cannot satisfy FRCP Rule 23(b)(1) because the Complaint is not mainly seeking declaratory or injunctive relief, but the lawsuit asks for up to $20 billion of damages. Yet, on the contrary, in Paragraph 74, the Complaint asks for as relief:

> (1) a cease and desist order to prohibit this type of illegal and criminal activity against Plaintiffs, Class members, and other U.S. citizens from occurring now and in the future, (2) that all Plaintiffs' and Class members' phone, internet, and social media records and communications records, whether telephonic or electronic, be returned to the [service] provider and expunged from federal Government records; and (3) a full disclosure and a complete accounting of what Defendant *[sic]* as a whole has *[sic]* done and allowed the DOJ, CIA, FBI, and NSA to do.

While the Opposition is correct that the Complaint demands up to $20 billion, this is only because of the enormous size of the class, which itself could be 50 to 200 million individuals, as will be discovered by the records of the service providers affected. The damages sought may be as little as $200 to $400 per class member. Thus, the damages truly are "incidental" to declaratory relief for each class member. The impression that damages sought are not merely incidental ignores the size of the class. Without significant penalties, Defendants are unlikely to

14

be deterred from violations. The temptations for Defendants to cheat are high and personal responsibility in a bureaucracy low. Further, the impression that damages claimed will require resolving significant issues unique to each class member also overlooks the small size of requested damages per class member. Damages or deterrent punitive damages averaging less than $500 per class member do qualify as incidental despite the overall size.

## B. Plaintiffs also cannot satisfy the predominance and superiority requirements of Rule 23(b)(3).

FRCP 23(b)(3) does permit claims for individual damages for class members. The U.S Supreme Court explained: "we think it clear that individualized monetary claims belong in Rule 23(b)(3)," *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. at 2567.

Defendants also argue that the proposed class cannot satisfy FRCP Rule 23(b)(2) such that (1) common questions "predominate over any questions affecting only individual members"; and that (2) class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." *In re Fannie Mae Secs. Litig.*, 247 F.R.D. 32, 36 (D.D.C. 2008) *(internal quotation omitted).*

> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
> \* \* \*
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Again, Defendants misconceive the gravamen of the lawsuit. Properly framed, the

question of whether indiscriminate, mass collection of communications without a warrant or probable cause is constitutional and legal obviously predominates over any other question affecting any member of the class. The classes' claims may constitute a single question of law.

What would be the alternative to a class action as the vehicle for vindicating the interests of class members? Millions of individuals would have to sue individually, with the duplicative effort of common parts repeated in each lawsuit. The courts would have to deal separately with aspects of each lawsuit that could be handled instead only once for all class members.

**Conclusion**

For the foregoing reasons, Plaintiffs successfully identified a definite and ascertainable class, fulfill their burden under Rule 23(a) and 23(b) and Plaintiffs' counsel is more than qualified to handle this case both because there is no conflict of interest and because of his successful thirty-seven year legal career managing and litigating such cases. It is in the interest of affected American citizens that this case proceed as a class action.

Dated: May 2, 2014

Respectfully submitted,

/s/ *Larry Klayman*
Larry Klayman, Esq.
General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2014 a true and correct copy of the foregoing Opposition to Government Defendants' Partial Motion to Dismiss (Civil Action Nos. 13-cv-851 and 13-cv- 881) was submitted electronically to the District Court for the District of Columbia and served via CM/ECF upon the following:

James J. Gilligan
Special Litigation Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
 (202) 514-3358
Email: James.Gilligan@usdoj.gov

Attorneys for Defendants.

                                                Respectfully submitted,
                                                 /s/ *Larry Klayman*
                                                Larry Klayman, Esq.
                                                D.C. Bar No. 334581
                                                Klayman Law Firm
                                                2020 Pennsylvania Ave. NW, Suite 345
                                                Washington, DC 20006
                                                Tel: (310) 595-0800